Syllabus.

The City of Beardstown

*v.*

Lou Smith.

*Filed at Springfield May 7, 1894.*

150   169
59a 678
150       169,
d91a ⁵291
150       169
f95a ¹130
150       169
203 ¹³379
108a ⁵458

1. STREET CROSSINGS—*duty of city to keep in repair.* This court is not prepared to hold that the duty of a city to keep its street crossings in a reasonably safe condition for the use of foot-passengers arises only when it sees fit, in the exercise of its discretion, to construct an artificial crossing over the street.

2. Where a street crossing has been established *de facto* by public use, the city is not at liberty, merely because no artificial crossing has been constructed, to intersect the crossing which the public have established for themselves, with dangerous ditches and pit-falls.

3. SAME—*cutting ditch across traveled pathway.* Where no sidewalk is made along a street, but there is a well-defined path along the side of such street, used by the public, and the city causes a ditch or drain to be dug in a cross-street intersecting such traveled pathway, it will become the duty of the city to keep the crossing of such path in a reasonably safe condition and repair for the use of pedestrians, in order to escape liability to one injured while attempting to cross the same.

4. While a city may, perhaps, not be chargeable with negligence for omitting to make a proper crossing of a street, yet if it sees fit to construct a ditch in the street it will be bound to use reasonable care to so construct and maintain it as to make it reasonably safe, in view of such uses as were being actually made of the street.

5. SAME—*degree of care required of persons using the same.* In an action against a city to recover for a personal injury from a defective or unsafe street crossing, an instruction for the plaintiff, merely holding that a person passing over a sidewalk or street is not bound to use more than reasonable care and caution in respect to his own safety, does not require of the plaintiff a lower degree of care and diligence than the law prescribes, and is not erroneous.

6. NEGLIGENCE—*degree of care required of plaintiff.* In an action based on negligence, to recover for a personal injury, the defendant asked and the court refused an instruction, that "if the jury find, from the evidence, that the plaintiff was guilty of any negligence, however slight, which contributed to the alleged injury complained of, then the jury must find for the defendant, unless the jury further find, from the evidence, that the defendant was guilty of negligence, which, in comparison with the plaintiff's, was gross:" *Held,* clearly erroneous,

as requiring proof that the plaintiff was in the exercise of the highest degree of care.

7.  A person injured by the negligence of another can not recover therefor, unless he, at the time, was in the exercise of reasonable and ordinary care for his own safety.

8.  SAME—*personal injury—measure of damages.* In an action for a personal injury, when the only special damages claimed in the declaration cover only the hindrance to the plaintiff's business and expenses in being cured, evidence of what she could have made by a special arrangement to go into the business of dressmaking, is not admissible.

9.  To show the ability and capability of the plaintiff to labor and carry on business, in order to ascertain what is a fair compensation for its prevention, is to show the reasonable value of her labor in her business. When it is of a kind that is paid in wages, the usual amount per day, week or month is easily ascertainable as a fact; but in another case it is a matter of opinion, and opinion is as competent evidence in such cases as is knowledge in the others.

10.  EVIDENCE—*admissibility—waiver of objection.* The plaintiff in an action for a personal injury testified, that prior to the injury she was receiving fifty cents a day for her work, but had made arrangements to go into business for herself, by which she could have made $2.50 per day for her work. The last statement was admitted, over the defendant's objection. The plaintiff, in reply to the question, "You may state what you could have earned if it had not been for this accident," testified, "I could have earned $2.50 per day," to which there was no objection, and the defendant accepted the statement and cross-examined upon it, as competent, without any inquiry as to the special arrangement: *Held,* that this might be considered as an abandonment of the objection.

11.  INSTRUCTIONS—*inapplicable to the case on trial.* Where the negligence charged against a city was not in failing to construct a proper crossing, but in digging and maintaining an open ditch across a path in a street which was used by the public, an instruction laying down the proposition, that the question whether a street crossing should or should not be constructed was left to the city authorities, and the city had a discretion in such matters with which the courts would not interfere except when abused, and that until the city exercised its discretionary power by constructing a street crossing, or allowing it to be constructed, it was not liable for damages resulting wholly from the absence of such street crossing, is properly refused, as being inapplicable to the case before the jury.

12.  NEW TRIAL—*conversation of a party to the suit with a juror.* During the trial of a suit, and as the court took a recess for dinner, the plaintiff and one of the jurors walked together part of the way from

the court house to the hotel, where both were boarding, and while so walking, engaged in a conversation. It was shown that the distance between the court house and hotel was but a few steps, and that the juror's overtaking the plaintiff was purely accidental, and that nothing was said between them in relation to the suit: *Held*, that while this conduct was improper, it was not sufficient ground for a new trial.

13. ASSIGNING ERROR—*for ruling of court conceded by party complaining to be correct, on trial.* A party can not successfully assign for error the giving of an instruction laying down a rule substantially identical with the one laid down, or distinctly affirmed or recognized, in an instruction given at his own request.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Cass county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. MILLS & McCLURE, for the appellant.

Messrs. BAILEY & HOLLEY, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by Lou Smith against the city of Beardstown, to recover damages for a personal injury received by the plaintiff in consequence of falling into an open ditch or drain in Adams street, one of the public streets of the city. The defendant pleaded not guilty, and at the trial the jury found the defendant guilty and assessed the plaintiff's damages at $2250, and for that sum and costs the plaintiff had judgment. That judgment was affirmed by the Appellate Court on appeal, and this appeal is from the judgment of affirmance.

Adams street in the city of Beardstown runs from south of east to north of west, and is crossed at right angles by Fifth street. No crossing seems to have been constructed over Fifth street on the northerly side of Adams street, nor was there any sidewalk on the northerly side of Adams street along the blocks either easterly or westerly from the intersection of the two streets, but there was a beaten and continuous path along

both blocks and across Fifth street, and which was commonly used as such by foot-passengers.    Several years prior to the plaintiff's injury, the city had caused a ditch or drain to be dug in Fifth street across this path, for the purpose of conducting the surface water into a sewer in Adams street.   This ditch or drain, as the evidence tends to show, was some twelve or fourteen inches in depth and about two feet in width, and was floored and walled up on both sides with rock and left uncovered.   Both the path and ditch were somewhat obscured by weeds.   It appears that on the opposite side of Adams street, a crossing over Fifth street had been made of cinders, and that there were crossings over Adams street on both sides of Fifth street.

Between half past eight and nine o'clock in the evening of September 25, 1891, the plaintiff, accompanied by her sister, was returning to her residence from a point on the easterly side of Fifth street and north of Adams street.   Her most direct route took her to Adams street, and thence westerly along the northerly side of Adams street across the ditch in question.   On reaching the ditch, she failed to see it, and as a consequence stepped into it and fell and received the injuries of which she now complains.

The only assignments of error insisted upon by counsel in this court are, those which call in question the rulings of the trial court in the instructions to the jury, in the admission and exclusion of evidence, and in refusing to grant a new trial on account of the alleged misconduct of the plaintiff and one of the jurors during the progress of the trial.   Complaint is made of the second, third and sixth instructions given to the jury at the instance of the plaintiff, those instructions being as follows :

2. "The court instructs the jury, that it is the duty of the defendant, the city of Beardstown, to keep its public streets, sidewalks and street crossings in a reasonably safe condition

and repair, for the safety of persons who have occasion to pass over the same.

3. "The court instructs the jury, that a person passing over a sidewalk or street is not bound to exercise more than reasonable care and caution in respect to his own safety. Until he is charged with notice to the contrary, he has a right to presume the same to be in a reasonably safe condition.

6. "The court instructs the jury, that if you believe, from the evidence in this case, that the defendant is a municipal corporation, and as such, on the 25th day of September, A. D. 1891, and prior thereto, was possessed and had control of the street and walk mentioned in plaintiff's declaration herein, then it was the duty of the defendant to keep said street and walk in reasonably good and safe repair for the safety of passengers passing along and over the same; and if you believe, from the evidence in this case, that the defendant constructed and maintained in, upon and across a part of said street a ditch or conduit substantially as charged in the plaintiff's declaration, or some count thereof, and that the same was not constructed and maintained so as to be reasonably safe for foot-passenger who had occasion to pass on and over the same, and that the plaintiff, while in the exercise of due care and caution on her part for her own safety, unavoidably fell into said ditch or conduit, and was thereby injured, and has sustained damages in consequence of such injury, then you should find the issues for the plaintiff, and assess her damages at whatever sum you may find, from the evidence in the case, she is entitled to."

The chief objection urged to the second and sixth instructions, if we understand it, is, that they attempt to lay down the rule of diligence incumbent upon the city in keeping its "streets," as distinguished from its "sidewalks and street-crossings," in repair for the use of foot-passengers. It is contended, upon the authority of the *City of Aurora* v. *Hillman,* 90 Ill. 61, and other like decisions, that a pedestrian has not

an equal right with one who drives a carriage, to travel in and along the driveway of a public street, and that a city is not under any obligation to keep such driveway, longitudinally, in a fit and safe condition for pedestrians.

Whether the rule sought to be derived from those decisions is a just and sound one or not, we are unable to see that, under the facts appearing in this record, it has any application here. The plaintiff was injured by falling into an open ditch or drain situate, it is true, in the roadway of Fifth street and outside of the space devoted to the sidewalk in that street. But she was not attempting to travel along the roadway longitudinally, but was crossing the street on that portion of Adams street appropriate for the street-crossing for foot-passengers. While the evidence seems to show that no artificial crossing at that point had been constructed by the city, the proof is clear and uncontradicted that there was a plain and beaten path along that side of Adams street, extending across Fifth street, and that such path was quite commonly used by foot passengers in crossing the street. Such being the facts, it is not to be supposed that the jury could have understood the word "street" as used in these instructions as having any reference to the carriage-way on Fifth street as such, but only to that portion of the street upon which there was, *de facto*, a crossing for the use of pedestrians, and across which the city had dug and allowed to remain the open ditch or drain into which the plaintiff fell and was injured.

We are not prepared to hold that the duty of a city to keep its street crossings in a reasonably safe condition for the use of foot-passengers arises only when it sees fit, in the exercise of its discretion, to construct an artificial crossing over the street. And much less are we disposed to hold that, after a street-crossing has been established, *de facto*, by public use, the city is at liberty, merely because no artificial crossing has been constructed, to intersect the crossing which the public have established for themselves, with dangerous ditches and

pit-falls. We are of the opinion that, under the facts which the evidence in the case tended to establish, the duty of the city to keep the crossing in question in a reasonably safe condition and repair for the use of pedestrians had arisen, and that there was no material error in the instructions by which that duty was sought to be declared and enforced.

But there is another sufficient reason why the defendant can not be heard to complain of the instructions given for the plaintiff laying down the rule that it was the defendant's duty to keep its public streets, etc., in a reasonably safe condition and repair, viz., that the fifth instruction given at the instance of the defendant expressly recognized the same rule. That instruction held that, while the law requires a municipal corporation to keep its streets and sidewalks in a reasonably safe condition, yet the person who travels over the streets and sidewalks has no right to recklessly walk into danger, etc. A party can not successfully assign for error the giving of an instruction laying down a rule substantially identical with one laid down or distinctly affirmed or recognized in an instruction given at his own request.

The objection urged to the plaintiff's third instruction is, that it requires of persons passing over a sidewalk or street a lower degree of care and diligence in respect to his own safety than the law prescribes. The rule undoubtedly is, that a person injured by the negligence of another, can not recover unless he, at the time, was in the exercise of reasonable and ordinary care for his own safety; and in this case, several instructions were given at the instance of the defendant, and very properly we think, holding that if the plaintiff, at the time of her injury, was not exercising ordinary care for her own safety, she could not recover. The plaintiff's third instruction merely holds that a person passing over a sidewalk or street, is not bound to exercise more than reasonable care and caution in respect to his own safety, thus admitting the duty of exercising the degree of care and caution which the

law prescribes, but merely holding that a still higher degree was not required. In this we are able to perceive no material error.

For the reasons already stated, we think there was no error in the seventh instruction given at the instance of the plaintiff, which held, in substance, that if there was a path on the northerly side of Adams street for foot-passengers, which was used by persons who had occasion to and did pass along and over the same on foot, and if the defendant constructed a ditch across such path, then it was its duty to so construct it as to make it reasonably safe for foot-passengers who had occasion to pass over the same, and if the defendant did not so construct the ditch as to make it reasonably safe, and the plaintiff, while exercising reasonable care and caution on her part, fell into the ditch and was thereby injured, the defendant was liable for the damages thereby sustained. The negligence charged is not in failing to construct a proper crossing, but in digging and maintaining an open ditch across the one which the public had established for itself. While perhaps the city would not have been chargeable with negligence if it had done nothing in the premises, that is, for mere non-feasance, yet, having seen fit to construct a ditch in the street, it was bound to use reasonable care to so construct and maintain it as to make it reasonably safe, in view of such uses as were being actually made of the street.

Complaint is made of the refusal of the court to give the following instruction:

"If the jury find, from the evidence, that the plaintiff was guilty of any negligence, however slight, which contributed to the alleged injury complained of, then the jury must find their verdict for the defendant, unless the jury further find, from the evidence, that the defendant was guilty of negligence, which, in comparison with the plaintiff's, was gross."

This instruction was clearly erroneous and was properly refused. It held that contributory negligence, however slight,

was of itself sufficient to defeat a recovery, in the absence of gross negligence on the part of the defendant. The exercise of ordinary care may be consistent with slight negligence, that is, a failure to exercise the highest degree of care, but the burden which the law imposes upon a plaintiff seeking to recover for an injury resulting from the negligence of the defendant is, to show that at the time of the injury he was in the exercise of ordinary care. This instruction, however, if given, would have cast upon the plaintiff in this case the burden of proving that she was in the exercise of the highest degree of care.

The substance of the defendant's second refused instruction was given to the jury in another instruction, and in a form quite as favorable to the defendant, and there was therefore no error in refusing that instruction. The defendant's third and fourth refused instructions laid down the proposition that the question whether a street crossing shall or shall not be constructed was left by law to the city authorities, and the city had a discretion in such matters with which the courts and juries would not interfere, except when abused, and that until the city exercised its discretionary power, by constructing a street crossing, or allowing it to be constructed, or assuming control over one already constructed, it was not liable for damages resulting wholly from the absence of such street crossing. As has already been shown, the negligence for which the recovery was had was not a failure on the part of the city to construct and maintain a crossing, and consequently these instructions related to questions not before the jury, and for that reason they were properly refused.

Objection was made at the trial to certain testimony of the plaintiff while on the stand as a witness in her own behalf, and on that point we are disposed to adopt the reasoning and conclusion of the Appellate Court, which was as follows:

"On her direct examination she was asked, 'What were you receiving for your work while you worked?' and answered, 'I received fifty cents a day while I was working for the Misses

Hinton. I had made arrangements to go into business in Roodhouse for myself, by which I could have made $2.50 per day for my work.' This last statement was objected to, and the court was asked to rule it out, but refused, and exception was taken. The next question was, 'You may state what you could have earned if it had not been for this accident,' and answered, 'I could have earned $2.50 per day,' to which no objection was made. To the next question, 'Have you been able to earn anything since?' she answered, 'No, sir.'

"The record of her cross-examination is as follows: 'Tell this jury how you were going to earn this $2.50 a day. A. By dressmaking. Q. Did you ever earn $2.50 a day at dressmaking? A. Yes, sir. Q. Where at? A. In Roodhouse. Q. How much did you get when you worked by the day? A. Fifty cents. Q. You say that you could have earned more at Roodhouse? A. Yes, sir. Q. Why did you come down to work for fifty cents? A. That was because I was called home at the time my sister got married. Q. And you continued to work for fifty cents a day when you could make $2.50 a day? A. Yes, sir; I was not ready to go into business for myself.'

"The special damages claimed in the declaration covered only the hindrance to her business, and expenses incurred to be cured. What she would have made by the special arrangement referred to in her statement was therefore not properly admissible under the pleadings. Nor was her estimate or opinion of what she would or could have so earned. It should have been ruled out on the objection made. (*City of Chicago* v. *O'Brennan*, 65 Ill. 160.) But it was 'necessary to inquire into the ability and capability to labor or carry on business * * * prior to the injury, for it is manifest that what would be compensation would be greatly in excess of what another should recover, and inadequate to compensate still another,' as was said by the Supreme Court in *City of Joliet* v. *Conway*, 119 Ill. 492. To show her 'ability and capability to labor and carry on business,' in order to ascertain what would be a fair

compensation for its prevention, is to show the reasonable value of her labor in such business. When it is of a kind that is paid for in wages, the usual amount per day, week or month is easily ascertainable as a fact; but in another case it is matter of opinion, and therefore opinion is as competent evidence in such cases as is knowledge in the others. This statement objected to was not responsive to the question, and also was incompetent, not because it was an opinion as to what she could have made, but because it was what she could have made by special arrangement to go into business for herself, the loss of which would be special damage not alleged in the declaration. But the next question was without reference to any special arrangement—'how much could you have earned if it had not been for the accident,'—and the answer was the same, $2.50 per day. No objection was made to this question or answer. Counsel accepted it and cross-examined upon it, as general and competent, without any inquiry as to the special arrangement, what it was, whether partnership or not, how much capital it required and how much she had, or anything else in relation to it. This may be considered as an abandonment of the objection, since the statement complained of was the same as the answer which was received without objection, and could do no more harm. Nor do we think that the jury could have been influenced by either. The fact she stated was, that she worked by the day and got fifty cents for it, while her opinion was, that if she had gone into business for herself, with the necessary capital and ability to conduct it, without any experience, she could have made out of that capital, labor and ability as much as $2.50 per day, but she was called home by the marriage of her sister and was not ready to go into business for herself, whether because of her injury, or want of the necessary capital, or what other reason, if any, does not appear. It is not to be presumed that such an opinion of a party to the suit, in her own interest, could have had

any weight with the jury, as against the fact that in her actual business she received only fifty cents a day."

It was shown by affidavit, on motion for a new trial, that while the trial was in progress, and as the court took a recess for dinner, the plaintiff and one of the jurors walked together a part of the way from the court house to the hotel where both were boarding, and that while so walking together, they were engaged in conversation with each other. Conduct of this character between a party to a suit and juror during the progress of the trial is reprehensible, and unexplained, is usually sufficient to warrant the trial judge in setting aside the verdict and awarding a new trial. By way of explanation, however, it was shown that the distance between the court house and the hotel was but a few steps; that the juror's overtaking the plaintiff on her way to the hotel was purely accidental, and that nothing whatever was said between them in relation to the suit, but that their conversation was wholly upon indifferent matters, the subject of which neither was able to remember afterwards. In view of these explanations, we think this conduct, though improper, could not have materially prejudiced the defendant, and that it ought not therefore to be a ground for a new trial.

Some other points are raised which we have duly considered, but which we do not think require comment further than to say, that we are satisfied with the disposition made of them by the Appellate Court.

As we find no substantial error in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*