Anna VanCleef, Defendant in Error, *vs.* The City of Chicago, Plaintiff in Error.

*Opinion filed June 16, 1909.*

1. Municipal corporations—*grant of the use of streets for a street fair is unlawful.* A city has no power to authorize the use of streets for a carnival and street fair, and the occupancy of streets for such purpose is unlawful and the tents and platforms constitute a nuisance *per se.*

2. Same—*a city authorizing nuisance per se is not entitled to notice of its existence and character.* A city which has by affirmative act authorized the creation of a public nuisance is a participant in the nuisance and is not entitled to notice of its existence and character, and, although it does not itself put up the structures, it is liable for all injurious consequences to anyone who is in a position to complain of the breach of duty by the creation of the public nuisance.

3. Same—*city must use reasonable care to see that structures of street fair are reasonably safe.* When a city authorizes the occupation of its streets by the temporary structures of a street fair it is reasonably to be apprehended that unless considerable care is used in their construction some injury may result, and if an injury does result which is the natural consequence of the city's failure to exercise reasonable care to see that the structures were reasonably safe the city is liable.

4. Same—*liability of city is not confined to travelers on streets.* The liability of a city with respect to its streets is not confined to travelers but extends to persons using the streets for other proper purposes, and while, ordinarily, the city's duty is to use reasonable care to see that the streets are reasonably safe for the purposes for which they were intended, yet when it changes the character of the streets and devotes them to the purposes of a street fair it cannot escape liability for injury to persons attending the fair upon the ground that the street was intended for other uses.

5. Same—*distinction between liability of a city and person who leases his land for carnival.* The fact that an individual leasing his private premises for a carnival may not be liable for injuries due to the carnival company's negligent construction of its platform entrances to the tents does not excuse the liability of a city for a similar injury where the carnival company is using streets with the permission of the city, since the individual has no duty to the public and does no wrong when he leases his premises and permits the shows.

6. Same—*when city is liable for an injury to person attending street fair.* A person attending a street fair may assume that the platform entrances to the tents are reasonably safe for their intended purposes unless he has knowledge to the contrary, and if, while exercising reasonable care for his safety, he is injured as a result of the negligent construction of a platform over which he must pass in entering and leaving a tent show, he may recover from the city if it authorized the street fair and failed to exercise reasonable care to see that the platform was reasonably safe, even though it did not itself construct the platform.

7. Appeals and errors—*when assignment of errors in the Supreme Court is sufficient.* When a plaintiff in error assigns for error in the Supreme Court that the Appellate Court erred in affirming the judgment of the trial court, every question reviewable in the Supreme Court under the errors assigned in the Appellate Court is properly raised.

8. Same—*instructions are to be read as a series.* The fact that an instruction in a personal injury case upon the subject of assessing damages lacks the qualification that the jury must first find that the plaintiff is entitled to recover is not ground for reversal where the omission is cured by other instructions, so that, read as a series, the jury could not have understood or supposed that they could assess any damages unless the plaintiff had proved a right to recover.

Writ of Error to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. Chetlain, Judge, presiding.

John R. Caverly, (Sigmund Zeisler, of counsel,) for plaintiff in error:

The measure of the city's liability with respect to the safety of its streets is to use reasonable care and diligence to keep them in a reasonably safe condition and repair for lawful use in the ordinary mode for any of the purposes for which a public street is designed. *Chicago* v. *Keefe,* 114 Ill. 222; *Rock Island* v. *Gingles,* 217 id. 185; *Chicago* v. *Bixby,* 84 id. 82; *Hogan* v. *Chicago,* 168 id. 551; *Kohlhof* v. *Chicago,* 192 id. 249; Elliott on Roads and Streets,

sec. 615; Dillon on Mun. Corp. secs. 1017, 1019; Jones on Negligence of Mun. Corps. sec. 72.

An obstruction in a street which by its existence or by its defective condition renders the street unsafe, subjects the city to liability to one injured thereby while using the street as a street, but not to one who voluntarily enters into or upon the obstructing object and is injured by its defective condition while thus in or upon it. *Kelley* v. *Boston,* 180 Mass. 233; *Friedman* v. *Snare & T. Co.* 71 N. J. L. 605; *Hamilton* v. *Detroit,* 105 Mich. 514; *Crawford* v. *Griffin,* 113 Ga. 562.

The city owes its duty with respect to the safety of a street only to those who use it as a street, not to those who voluntarily leave it for their own convenience nor to those not using it at the time of the injury. *Kiley* v. *Kansas,* 87 Mo. 103; *Johnson* v. *New York,* 186 N. Y. 139; *Anderson* v. *East,* 117 Ind. 126.

The city's ownership of the ground on which the structure in the case at bar was erected does not make the city liable to those entering upon the structure, for its defective condition. The owner of land licensing another to erect a structure thereon is not liable to a stranger for an injury resulting from a defect in the structure due to the negligence of the lessee or licensee, in the absence of circumstances not existing in this case. *Railway Co.* v. *Mangum,* 68 Tex. 342; *Clifford* v. *Cotton Mills,* 146 Mass. 47; *Masonic Ass.* v. *Cohn,* 192 Ill. 210; *Scammon* v. *Chicago,* 25 id. 424.

The failure of the city to exercise its police power to require a railing on the stairs in question or to stop their use in the absence of such railing does not subject it to liability. A city is not liable for failure to exercise, or for negligence in the exercise of, its public or governmental powers. Dillon on Mun. Corp. secs. 950, 951; *Culver* v. *Streator,* 130 Ill. 238; *Tollefson* v. *Ottawa,* 228 id. 134; *Anderson* v. *East,* 117 Ind. 126.

To negative contributory negligence it is not sufficient that the plaintiff did not know that the condition of the stairs was dangerous or defective. It is further necessary that had she exercised reasonable care she would not have known. *Chicago* v. *McLean,* 133 Ill. 148.

DARROW, MASTERS & WILSON, for defendant in error:

A city has been uniformly held liable for injuries arising on account of the holding of street fairs when authorized by the city, on account of the misfeasance of the city in authorizing and permitting of such an affair, the principle being, that the city becomes a participant therein and liable on the ground of misfeasance or the doing of a positive act, as distinguished from non-feasance or failure to perform a governmental duty or function. *Johnson* v. *New York,* 186 N. Y. 139; *Richmond* v. *Smith,* 43 S. E. Rep. 345; *Landau* v. *New York,* 72 N. E. Rep. 631; *Forget* v. *Montreal,* 4 Mont. L. R. 77; *Brown* v. *Hamilton,* 4 Ont. L. R. 249; *Wheeler* v. *Fort Dodge,* 108 N. W. Rep. 1057; *Farrell* v. *Dubuque,* 105 id. 696; *Little* v. *Madison,* 42 Wis. 653; *Speir* v. *Brooklyn,* 21 L. R. A. 644; *Agusta* v. *Reynolds,* 69 id. 564; *Denver* v. *Spencer,* 82 Pac. Rep. 590; *Cole* v. *Nashville,* 4 Sneed, 162.

The city being a participant in the holding of the street fair, it was equally liable with the other parties interested for an injury which occurred by reason of the negligent construction of any of the structures upon its property or under its control, to a person attending the fair at its solicitation or the solicitation of any of the other participants in the giving of the street fair. *Barthold* v. *Philadelphia,* 26 Atl. Rep. 304, and cases cited *supra; Barnes* v. *District of Columbia,* 91 U. S. 440; *Mayor* v. *Bailey,* 2 Denio, 433.

The fact that the structure in question was defective, in that no guard rail protected the stairs, was one for the jury as to whether or not, under all the circumstances and in view of the purpose for which it was intended, the struc-

ture as it existed was a nuisance. *Fox* v. *Buffalo Park,* 47 N. Y. Supp. 788; *Jarvis* v. *Baxter,* 52 N. Y. Sup. Ct. 109; 1 Wood on Nuisances, (3d ed.) 177; *Melker* v. *New York,* 190 N. Y. 480.

Where a person sustains special damages, the creator of a public nuisance, whether individual or municipality, is liable in damages, and a nuisance may be therefore both public and private. *Wylie* v. *Elwood,* 134 Ill. 281.

The question whether the plaintiff was using the street and the stairway as a traveler was one of fact for the jury and is not a question of law, the stairs being authorized by the city as part of the thoroughfare, for the purpose of ingress and egress to the show. *Barney* v. *Manchester,* 58 N. H. 430; *Duffy* v. *Dubuque,* 63 Iowa, 171; *Chicago* v. *Keefe,* 114 Ill. 222; *Gulliene* v. *Lowell,* 144 Mass. 491.

A city is liable for the condition of its streets, and this is a primary duty, and applies not only to the use of the street for ordinary travel but for whatever purpose the street may be used, when authorized by or with the knowledge of the city. *Gathman* v. *Chicago,* 236 Ill. 9; *Transportation Co.* v. *Chicago,* 237 id. 582; *Little* v. *Madison,* 49 Wis. 605; *McCarthy* v. *Chicago,* 53 Ill. 38; *Railroad Co.* v. *State,* 37 Ind. 493; *Hogan* v. *Chicago,* 168 Ill. 551.

Mr. Justice Cartwright delivered the opinion of the court:

On June 15, 1903, the city council of the city of Chicago, on the application of the business men of the eighth ward, passed a resolution giving permission to use certain streets for a merchants' carnival and street fair to be held from July 20 to July 26, 1903, with the necessary shows, stands and attractions. Under that authority the streets named in the resolution were occupied with tents, booths and other structures, and at the corner of Ninety-second street and Exchange avenue there were three shows in tents erected in the street intersection. One was an animal show,

another a lilliputian, and the third was a show named "Enoch, the Water Man." The streets were festooned and illuminated by electric lights and the crowds at night were estimated from 40,000 to 50,000 people. The sidewalks and roadways were full of visitors to the street carnival and teams and street cars went around through other streets. The tent in which the show of "Enoch" was conducted would hold three hundred people. In front of it was a platform six feet wide, fifteen or more feet long and four or five feet above the street. A "barker" stood on the platform attracting the attention of the crowd to the show, and there was a place there for selling tickets. A stairway five or six feet wide went up to the platform from the street and a like stairway led down on the other side into the tent. The show lasted about ten or fifteen minutes, and consisted of "Enoch" in a water tank smoking a pipe. The defendant in error, Anna VanCleef, went into the show with her husband about nine o'clock in the evening of July 24, 1903. The performance was attended by one hundred and fifty to two hundred people, and at its conclusion the crowd started to go out on the street. In descending the steps from the platform to the street Mrs. VanCleef was pushed by the crowd, and there being no railing or guard along the edge of the stairway she fell to the street and suffered serious injuries. She brought her suit in the superior court of Cook county against the plaintiff in error, the city of Chicago, to recover damages for her injuries, and obtained a verdict for $15,000. The court denied motions for a new trial and in arrest of judgment and entered judgment on the verdict. The Branch Appellate Court for the First District affirmed the judgment, and the city sued out a writ of error from this court to bring the judgment of the Appellate Court in review.

The brief and argument of counsel for the city is almost wholly devoted to the general proposition that under the facts of the case the plaintiff was not entitled to re-

cover and the city was not liable for her injury, and is not directed to any ruling of the trial court or any error assigned, and an argument of that kind might very properly be disregarded. On the oral argument, however, the counsel stated that the argument then made and the printed brief and argument were designed to demonstrate that the court erred in refusing to direct a verdict of not guilty and refusing to arrest the judgment after verdict, and we are disposed to consider them as applying to the errors assigned on such rulings.

The controverted questions of fact have been settled against the city by the judgment of the Appellate Court, and there is and can be no dispute of the propositions that the city had no power to authorize the use of the street for the carnival and street fair; that the occupancy of the street for that purpose was unlawful and the tent and platform a nuisance *per se;* that the city having by an affirmative act authorized the creation of the public nuisance, became a participant in creating and maintaining it and was not entitled to any notice of its existence or character, and that although it did not itself put up the structure, it became liable for all injurious consequences to anyone who might be in a position to complain of the breach of duty by the creation of the nuisance. It is admitted that the structure in the street was a public nuisance and the city would be liable for any resulting injuries to persons using the street for street purposes, but it is contended that to those using the structure it was a private nuisance on account of its improper construction, and that the city was not a participant in creating and maintaining the private nuisance in its aspect as a structure unsafe to those using it. Counsel, repeating the argument in different form, say that the invitation to enter the show was extended by parties in control of it, and while the city would be liable for an injury to anyone using the street for the legitimate purposes of a street, the plaintiff was hurt solely by reason of

entering upon the insufficient stairway, and the fact that the street had been made unsafe for use as a street had no connection with her injury. Counsel therefore conclude that the wrong by the city was not the proximate cause of the injury to the plaintiff.

It is, of course, true that the injury must be the legitimate consequence of the wrong, and, considering the question of proximate cause in the relation of cause and effect, it is clear that the injury was a natural result of the wrongful act of the city. When the city authorized showmen to fill its streets with tents and structures of the temporary character usual in carnivals and street fairs, it was reasonably to be apprehended that unless considerable care was exercised injury might result. It was not necessary that the city should have contemplated or been able to anticipate the injurious consequences to the plaintiff or the precise form of her injury, but it is sufficient that the city might have foreseen that some injury might result from its wrongful act, and when the injury did result, it could be seen that it was the natural consequence of the occupation of the street by structures of the nature of this platform under the permission given by the city. The negligence of the one who constructed the platform would not exempt the city if the permission was also a proximate cause. The city was guilty of a serious wrong and violation of duty by permitting the occupation of the streets for show purposes and creating a nuisance in them, and the expectation was that large numbers of people would go into the shows by whatever means might be provided. The city negligently permitted the structure authorized by it to be erected in an unsafe manner, and the wrong and resulting damage were connected according to the ordinary course of events. This proposition is practically conceded on the part of the city in the admission expressly made that if the plaintiff had gone on the platform voluntarily for the purpose of passing over it to reach some other place, and precisely the

same injury had resulted from the same cause, the city would be liable. The relation of cause and effect would not exist in that case any more than in this.

The principal ground upon which counsel insist that the wrong was not the proximate cause of the injury is, that the city owed no duty to the plaintiff when she went over the platform to see the show and while she was returning from it, and as to her the street was not unsafe, as a street, while she was in that situation. It is admitted that the plaintiff did not lose her character as a legitimate user of the street until the moment she stepped upon the stairway to enter the show, and up to that moment, even though she had merely loitered around the street or mingled with the throng that filled the sidewalks and roadway, the duty of the city existed and also a liability for any injury resulting from the wrongful use of the street, but it is insisted that when she started up the stairway the duty ceased and would not come into being again until she was again on the street. The liability of the city is, of course, not confined to travelers, but extends to a person stopping on the street to converse with another, or stopping to see a procession pass, or using the street for convenience or pleasure, and there are liabilities to abutting owners and to children playing upon the street. (*City of Chicago* v. *Keefe,* 114 Ill. 222.) The position of counsel for the city is illustrated by the case of *Cohen* v. *New York,* 113 N. Y. 532. In that case the city granted permission to a grocer to keep his wagon on the street in front of his store and he negligently tied up the thills, which fell and struck Cohen, who was passing. It is said that if Cohen had climbed on the wagon the city would not have been liable, which is doubtless true. It is also true that in the case of *Lilly* v. *Madison,* 42 Wis. 643, if the plaintiff had mounted one of the bears in the bear show licensed in the street and had been injured the city would not have been liable. But the argument overlooks the clear and broad distinction between those cases and this

in the fact that when the nuisance was authorized it was expected that the public would attend the shows and go upon the structures placed in the street. Undoubtedly, under ordinary circumstances it is the duty of a city to see that its streets are reasonably safe for the uses for which streets are intended, but when a city changes the character of a street and devotes it to the purposes of a street fair we do not think it can escape liability on the ground that the street was intended for different uses. If this carnival and street fair had been licensed upon common public ground or in a park under the control of the city we do not think there could be any question as to liability, and we are unable to state any valid ground of distinction when the city perverted its streets to like uses for a show ground. In *Forget* v. *Corporation of Montreal,* 4 Montreal L. R. 77, the city was held liable for injuries arising from the use of a public place for an exhibition without taking the necessary measures to protect the public against dangers that might result. Manifestly, public policy would not dictate or approve refined distinctions for the purpose of relieving the city from the natural and probable consequences of its wrongful act. Justice would rather require such distinctions to be made in favor of a party injured, and if that were done, we might say that when the plaintiff left the tent she was using the street, as such, to reach some other place. We do not regard that as necessary, but as the city had changed the ordinary conditions governing the highway and had actively participated in creating a carnival and street fair in public streets, we think it assumed the obligation to use reasonable care to see that the structures were reasonably safe.

It is insisted that because a private individual owning premises and leasing them for the purpose of a show, or permitting shows on them, would not be liable for the negligent construction of a platform the city should not be held liable. But the cases are not alike, since the individual

owner has no duty to the public and is not guilty of any wrong in leasing his premises or permitting the shows, while a city is guilty of violation of duty and a serious wrong in doing the same thing.

In our opinion the court did not err in refusing to direct a verdict or in denying the motion in arrest of judgment.

Complaint is made of the action of the court in giving, refusing and modifying instructions, and the reply is made that the assignment of errors is not sufficient to raise any question concerning the instructions. In the Appellate Court the assignment of errors included all the matters complained of, and the errors assigned in this court are, that the Appellate Court erred in not reversing the judgment, erred in affirming the judgment and erred in rendering judgment for costs against the city. The judgment under review in this court is the judgment of the Appellate Court, and the only error the Appellate Court could commit would be in affirming the judgment. The Appellate Court did not give, refuse or modify instructions or make any other ruling which was excepted to, and it was not necessary in this court to re-assign errors of the trial court. When a plaintiff in error assigns for error in this court that the Appellate Court erred in affirming the judgment, every question reviewable in this court under the errors assigned in the Appellate Court is properly raised.

Instruction No. 7 which was given at the request of the plaintiff directed the jury that if the plaintiff was suffering from an affection or disease of the bones, the jury had a right to consider whether her existing condition was due to the affection or to the fall, and if they found it was due to the fall, even though the condition may have been aggravated by the condition of the bones at the time of the fall, they might proceed to assess the plaintiff's damages, if they found she had sustained any damages under the evidence in the case. The instruction, standing alone, was wrong in lacking the qualification that the jury must first

find that the plaintiff was entitled to recover. The omission, however, was cured by other instructions. In fact, if the number "7" was stricken out and the instruction should be read with No. 6 which preceded it, it would be free from any objection. Instruction No. 6 told the jury that if they found, from the evidence and under the instructions, that the plaintiff was entitled to recover as alleged in her declaration, then, in estimating the damages, they might take into consideration different elements mentioned in the instruction, and that instruction was followed by this one, which was faulty in omitting the condition mentioned. The instructions are to be read as a series, and the jury could not have misunderstood them when so read, or have supposed that damages might be assessed regardless of the merits of the case.

The sixteenth instruction as tendered by the defendant required the plaintiff to use due care and caution for her safety, commensurate with the knowledge which she had or which by the exercise of reasonable care she would have had, and the court modified it by confining her obligation in respect to care to defective conditions of which she had knowledge. She had a right to assume that the place was reasonably safe in the absence of knowledge to the contrary. But if the instruction was too limited in that respect, the defect was supplied by the fifteenth instruction, in which the court told the jury that the plaintiff was required to use such degree of care and caution for her safety as reasonably prudent persons would use under all the circumstances shown by the evidence.

The modification of instruction 17 did not change its substantial meaning.

Instruction 22, which was refused, represented the theory of the city that it was not liable, and that its duty was limited to the necessities of ordinary modes of travel or passing along the street. What has already been said shows that we do not regard that to be the law. And instruc-

tion 24 was not applicable to the case and was not the law. It directed the jury to regard the authority as a license to provide, maintain and conduct the exhibition in a proper and reasonably safe manner, and the resolution contained no qualification of that kind.

The judgment is affirmed.      *Judgment affirmed.*