Flossie Cogdill, Plaintiff-Appellee, v. City of Marion, Illinois, a Municipal Corporation, Defendant-Appellant.

Term No. 59–F–13.

Fourth District.

June 8, 1959.

Released for publication June 24, 1959.

David A. Warford, of Marion, for defendant-appellant.

Ralph W. Harris, of Marion (Albert E. Jenner, Jr., Philip W. Tone, of counsel) for plaintiff-appellee.

PER CURIAM.

Plaintiff, a 53 year old housewife, was injured in a fall on the parkway in front of her home. A jury returned a $5,000 verdict in her suit against the City of Marion in the Circuit Court of Williamson County. This appeal is from the judgment entered on said verdict and from the denial of defendant's post-trial motions. The principal contentions made relate to the sufficiency of the evidence as a matter of law, the manifest weight of said evidence, and the admission of certain testimony over defendant's objection.

An understanding of the terrain is necessary as a background to the evidence of plaintiff's fall. The street on which plaintiff's home fronted ascended gradually in a northerly direction to a railroad crossing about 120 feet distant. Along the entire block in front of plaintiff's house, the roadway was at an elevation about 2½ to 3½ feet higher than the residence properties. The defendant handled this difference in elevation by sloping the 16-foot parkway down to a shallow depression running alongside the public sidewalk paralleling the street. This meant that in going from the street to the sidewalk in front of plaintiff's house, or at any other point in the block, one would go down an incline of less than 45 degrees for a distance of 10 feet, then up a slight rise to the sidewalk about another six feet. The shallow depression alongside the sidewalk was built to handle the drainage of surface water from the north and from the road. From a picture of the area, it would appear that the surface of the parkway was smooth and regular. There was testimony, however, that little rocks had washed onto the bank from the shoulder. Nonetheless, the evidence established that the parkway was sufficiently smooth to be mowed

101

by the residents along the street in spite of the small stones. Alongside the railroad embankment 120 feet to the north, ran a private driveway from the street which crossed the same public sidewalk running in front of plaintiff's house; to the south 115 feet, Jackson Street runs in a westerly direction, affording a second access to the public sidewalk without crossing the sloping parkway. At the rear of plaintiff's property ran a north-south alley entered from Jackson Street which was frequently used by plaintiff's children when they "drove down" to visit. It was undisputed that the parkway was in much the same condition at the time of injury as it had been for many years and that plaintiff had lived there off and on since 1922.

Plaintiff testified that on July 11, 1956, she and her husband had been berry picking with another couple and returned home about 6:15 P. M. She was riding in the back seat with her husband. The car was stopped in front of plaintiff's house about two feet off the road, leaving about two feet more of shoulder before the parkway began its slope. It was daylight and the ground was dry. Plaintiff's husband and the other man in the party got out first and went around to the trunk to get the berries. As plaintiff got out and walked toward the rear of the car to get the house key from her husband, her foot slipped on the bank and she fell down into the ditch, breaking her ankle. Plaintiff's husband testified on his wife's behalf that his wife got out of the car, started down the bank and got about halfway when she turned back toward the car and fell. The driver of the car, also a witness for plaintiff, stated that plaintiff got out, started down the bank and got about two-thirds of the way down when she slipped and fell. The wife of the last witness testified that plaintiff was about halfway down at the foot of the bank when the men picked her up. The testimony provided by these witnesses constituted

102

plaintiff's case on the nature and condition of the parkway and the circumstances of plaintiff's injury.

██ ██ Long established principles of law fix the rights and liabilities of the parties in a case of this sort. A municipality is required to maintain its streets and sidewalks, including parkways, in a reasonably safe condition considering the use to be made of such area. Arvidson v. City of Elmhurst, 11 Ill.2d 601, 145 N.E.2d 105; McKinley v. City of Chicago, 299 Ill. App. 58, 19 N.E.2d 452; Caruso v. Chicago, 278 Ill. App. 247. Little help is had in comparing the facts here with those in other cases that have resulted in recovery or where liability was denied. The test in any case is the standard query of whether a reasonably prudent man should anticipate danger to a pedestrian from the condition of the sidewalk or parkway.

The briefs in this case refer to the decision of Swenson v. City of Rockford, 9 Ill.2d 122, 136 N.E.2d 777, which is often cited in cases concerning liability of cities for alleged defects in sidewalks or streets. A careful reading of that opinion will disclose that there was nothing whatever on that subject involved in the decision. It is expressly stated that the sole question presented to the court was whether the plaintiff was guilty of contributory negligence as a matter of law.

In the case of Arvidson v. City of Elmhurst, 11 Ill.2d 601, 145 N.E.2d 105, the Illinois Supreme Court recognized that there are a few jurisdictions in which the question of negligence of a city is always one of fact for a jury, but expressly stated this is not the law of Illinois. The powers and duties of the Appellate Courts of this state remain intact, in ordinary negligence cases. The opinion carefully differentiated railroad cases, in which the powers and duties of these courts appear to have been curtailed by decisions of the United States Supreme Court in cases arising under federal statutes. In other cases it continues to be the

function of this court to consider whether the injury in question could be regarded as reasonably foreseeable by the proverbial reasonably prudent man.

██ ██ With these principles in mind, let us consider the case made out by plaintiff's evidence. We have a condition of a sloping parkway and a small drainage ditch in a residential area made necessary by the elevation of railroad tracks and the street. No absolutely level access to the sidewalk from the street can be had except at the two corners of the block, about 120 feet distant. This condition had been in existence for many years and plaintiff had been familiar with it since 1922. The evidence and pictorial exhibit indicate that the parkway was a well-contoured bank sloping as gradually as the width of the right-of-way permitted. It was well designed, considering the nature of the terrain and necessary surface drainage. There is no indication of holes, pits or washouts such as might trip. Plaintiff does not argue to the contrary. Obviously, then, the mere fact that the parkway sloped cannot be treated as evidence of negligence. The only other feature of the parkway, aside from the necessary slope, which presented the possibility of injury was the presence of stones that had washed down from the shoulder of the road. These were described by plaintiff as "little white rocks" that had been there a long time; their size is further indicated by testimony that homeowners along the street mowed the parkway grass without difficulty. However, the mere presence of little rocks on a parkway likewise cannot be deemed negligence. To argue that a municipality must maintain parkways, sloping or level, free of small stones is to stretch the duty of a city beyond reasonable bounds. Such a duty would be questionable in the maintenance of sidewalks where pedestrian traffic is invited and channeled. Even less, then, could it be deemed a source of liability in the case of parkways.

██ ██ But more fatal to plaintiff's action is the absence of any evidentiary relation between the alleged defect of stones on the parkway and her fall. She testified merely that she "slipped on the bank." It would be pure speculation to conclude that plaintiff turned her ankle on a rock when she testified merely that she "slipped" and it was error to permit the case to go to a jury. Though in reviewing a ruling on defendant's motion for judgment notwithstanding the verdict we follow the familiar rule and consider the evidence most strongly in plaintiff's favor, such rule cannot supply missing evidence.

██ We, conclude, therefore, that there is no evidence of negligent maintenance of the parkway resulting in plaintiff's "slipping" and her resultant injury. The judgment must, therefore, be reversed.

Reversed.

HOFFMAN, J., took no part.