PATRICK T. DEREN, By DALE F. DEREN, His Mother and Next Friend, Plaintiff-Appellant, *v.* THE CITY OF CARBONDALE *et al.,* Defendants-Appellees.

(No. 71-221;

Fifth District—August 7, 1973.

G. MORAN, P. J., dissenting.

John E. Norton, of Belleville, (Edward J. Kionka, of counsel,) for appellant.

J. C. Mitchell and W. A. Armstrong, both of Marion, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals from the dismissal of his amended complaint for personal injuries. Defendants cross-appeal from a part of the same order allowing leave to file the amended complaint and in turn then dismissing it.

Plaintiff's amended complaint alleges that plaintiff is a student attending Southern Illinois University. In November 1966, as a 19-year-old minor, while in the exercise of ordinary care for his own safety, he was struck and injured by a hit-and-run automobile in the night when he was a pedestrian on a certain north and south roadway (Wall Street) in the defendant city. "For a long period of time prior thereto" the city had held out this roadway for use by the public; by reason of its location, South Wall was regularly used by a large number of pedestrians, especially persons attending or associated with Southern Illinois University, and that by use, the edge of the roadway had become a pedestrian walkway which the city knew or should have known; by reason thereof a duty arose on the city to maintain said pedestrian walkway in a reasonably safe condition for use by members of the walking public, among which was the plaintiff.

Negligence in seven different particulars was charged: failure to use ordinary care to maintain; failure to provide a separate pedestrian walkway; failure to provide railings, rails, or barriers; failure to warn drivers of pedestrians; failure to warn pedestrians of danger; failure to provide adequate street lighting; and permitting steep embankments to exist adjacent to the roadway, requiring pedestrians to walk in the roadway. The defendants are the city, the mayor, the city manager and the commissioners of public property, streets, and public safety of the City of Carbondale.

■ The cross-appeal must be disallowed since the plaintiff requested leave to amend his complaint within thirty days of the sustaining of a motion to dismiss the original complaint. This preserved the jurisdiction of court beyond the time in which the original dismissal would have become final. The court did not err in exercising its discretion to permit amendment of the complaint under the circumstances revealed here.

The plaintiff's appeal questions the propriety of the trial court's dismissal of the plaintiff's first amended complaint. The essential issue raised by the plaintiff distills to this: Does a city, possessed of knowledge of regular and heavy pedestrian use of a street planned, designed, and built solely for vehicular traffic, have a duty by reason of its knowledge to take reasonable precautions to safeguard such pedestrians from injury by vehicles in the various particulars claimed by the plaintiff?

■■ A number of plaintiff's specific allegations may be eliminated by the terms of the Local Governmental and Governmental Employees Tort Immunity Act. (Ill. Rev. Stat., ch. 85, secs. 1—101 *et seq.*) This statute was enacted in 1965 following a number of statutes and court decisions which had made basic changes in the law governing governmental subdivisions and municipal corporations. It is not necessary here to detail the history of these changes which have been frequently discussed. Suffice it to say that the historical distinction between proprietary and governmental functions has been generally abolished as the determining factor in liability of a local governmental entity. This detailed statute covers much of the area of liability and nonliability where persons claim injury and damages at the hands of various public bodies. The validity of the statute is not challenged in this case by any of the parties.

Part 2 of article II of this enactment deals with the immunity of public employees. Section 2—201 relieves a public employee from liability where his position involves the determination of policy or the exercise of discretion. Section 2—205 relieves a public employee from liability for an injury caused by his adoption or failure to adopt an enactment or by his failure to enforce any law.

Article III is concerned with immunities from liability for injuries occurring in the use of public property. The claim in this case is based upon the use of public property. Section 3—102 places a duty upon the entity to exercise ordinary care in the maintenance of its property,

"* * * for the use * * * of people whom the entity *intended and permitted* to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to

have taken measures to remedy or protect against such conditions." (Emphasis supplied.)

The next section of the statute, 3—103(a), provides that the entity is not liable,

"* * * for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe."

Subsection (b) provides "A public employee is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property."

The next paragraph provides that the entity and public employees are not liable for injuries caused by the failure to initially provide traffic control devices, signs and road markings.

Section 3—108 provides that the entity and public employees are not liable for an injury caused by the failure to supervise an activity on or the use of any public property.

■■ From these statutory provisions, it appears that public employees, which includes all of the defendants here except the city, are exempted from liabilities having to do with the design and construction of improvements to public property. In the particular instance involved, it is obvious, and charged, that the city owned, controlled, maintained and possessed the roadway involved. The individual defendants in their respective municipal offices are charged with having planned and designed the improvement. Since public employees are exempted from liability where a plan or design has been adopted by the legislative body of the local governmental entity, and the condition or improvement having been constructed in accordance with the approved plan and design, no liability is placed upon the public employees. Officers are included in the statutory definition of "employee" (sec. 1—202) thus eliminating the liability of the mayor, city manager, and commissioners who are made defendants to this action.

■■ In considering the duty of the city, by reference to this statute and the general law applicable to municipalities, it is manifest that the usual situation arises out of a defect or an obstruction in the public way. Neither is involved here. Plaintiff's complaint advises us that at a par-

ticular location on a north and south street in the general vicinity of a university campus, there was no sidewalk alongside the paved portion of the way, but that members of the public were nevertheless accustomed to walk out upon the paved portion of the roadway. Plaintiff's complaint does not charge that the city took any action to convert a portion of the street to a sidewalk. The liability of the city must, therefore, be viewed from the point of view of its intended use as a street, not as a sidewalk. Under these circumstances all of the negligence charged against the defendant fails since it is wholly predicated upon the street being a "walkway."

■■■ In *VanCleef v. City of Chicago*, 240 Ill. 318, 88 N.E. 815, where the city permitted the use of its street for a street carnival, the Supreme Court said:

> "Undoubtedly, under ordinary circumstances it is the duty of a city to see that its streets are reasonably safe for the uses for which streets are intended, * * *."

We conclude that the liability of a municipality with respect to its public streets is limited to their use as streets. Undoubtedly, the streets may be used by pedestrians in various ways; they may dismount in the street from vehicles; they may cross them or on occasion they may, where there is no sidewalk, walk upon the street. This, however, does not convert the street to a sidewalk. Illustrative is the statement from *Locigno v. City of Chicago*, 32 Ill.App.2d 412, 178 N.E.2d 124, "A street does not become a through street because it is used as a through street. It becomes a through street because it is so designated and appropriate signs placed." The cases reveal instances in which a city by its own action has converted a street to a sidewalk just as they have permitted the use of the street for a street carnival. Where these conversions take place additional duties may arise. We find no Illinois authority which permits the conversion of a street to a sidewalk by continued pedestrian use. Under the circumstances revealed by the evidence, there is no reason why vehicles might not regard the street still as a street, even though pedestrians occasionally walk upon it. This is not to say that motor vehicles may disregard the presence of pedestrians upon the street, but we are here concerned with the liability of the municipality.

■■ We have carefully examined the cases cited by the plaintiff and find no case which goes as far as the plaintiff would have us go. Indeed, two of the cases to which plaintiff refers us contain significant limitations. In *Maxey v. City of East St. Louis*, 158 Ill.App. 627, it is said at page 630 "The true rule in all cases, we think, is that a city is only required to maintain the respective portions of its streets in reasonably safe condition *for the purposes to which they are respectively devoted*

*by the intention and sanction of the city."* (Emphasis supplied.) In *Cogdill v. City of Marion,* 22 Ill.App.2d 99, 159 N.E.2d 28, this court said "Long established principles of law fix the rights and liabilities of the parties in a case of this sort. A municipality is required to maintain its streets and sidewalks, including parkways, in a reasonably safe condition *considering the use to be made of such area."* (Emphasis supplied.)

So far as we have been able to determine from the decided cases, the responsibility of public entities has only been extended to those undertakings which they choose or elect to carry out. We are not prepared to create a general duty upon municipalities for the safeguarding of pedestrians when they are walking upon the public streets. To require a general duty of safeguarding all pedestrians under circumstances beyond that undertaken by the municipality is to stretch the function of city government too far.

■■ A municipality never has been intended under our system as a principal source of social protection. We cannot conceive of a municipality which would be able simultaneously as the need develops to provide the roads, sidewalks, police and fire protection, and every facet of modern municipal service at the most desirable level. We suggest that it is enough that they exercise ordinary care with respect to those undertakings which they have chosen or selected. We are unwilling to delineate the outer limit of municipal liability, but it is sufficient to say that the facts in complainant's complaint fall somewhere outside the limits.

The trial court was correct in dismissing plaintiff's complaint.

Judgment affirmed.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE MORAN, dissenting:

The rationale of the majority opinion is based upon its conclusion that the street in question was designed and built solely for vehicular traffic. However, there is no proof in the record it was so restricted by dedication, statute or ordinance. Therefore, the conclusion of the majority is wrong.

> "* * * When highways are not restricted by their dedication or statute to some particular mode of use they are open to all suitable methods of travel. A street is made for the passage of persons and property, and the law cannot define what exclusive means of transportation and passage shall be used." *Molway v. City of Chicago,* 239 Ill. 486 at 490,

Chapter 85, par. 3—103(a) of the Illinois Revised Statutes provides: "(a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe."

The facts indicate that the local public entity which in this case is the City of Carbondale has already decided to provide a way for public access or travel. It has decided that the form of that way should be a street, and because no other pathway such as a sidewalk has been installed, it is apparent that the street was to and did serve pedestrian as well as vehicular traffic. No other conclusion is possible because, without a separate sidewalk, the abutting owner's property extends to the edge of the street and any pedestrian travel on that property would constitute trespass. Once it is apparent that the governmental entity has done more than provide a street for vehicular traffic, but has in fact provided a "way" for all traffic including pedestrian traffic, it is an inescapable conclusion that the public entity falls under a duty to exercise ordinary care to design, construct, and maintain that way in a reasonably safe condition for both pedestrian and vehicular traffic. Therefore, while the decision to adopt a plan may be discretionary so that no liability is imposed for failure to adopt a plan, it has been consistently held in Illinois that carrying out a plan, once adopted, is ministerial and requires the exercise of due care commensurate with the likelihood of injury which is reasonably foreseeable. *City of Peoria v. Eisler*, 62 Ill.App. 26; *Resnik v. Michaels*, 52 Ill.App.2d 107; *Johnston v. City of East Moline*, 405 Ill. 460; and *Baran v. City of Chicago Heights*, 43 Ill.2d 177.

In *Baran* liability was imposed for the negligent installation and operation of street lights despite defendant's claim that such installation fell within the discretionary or governmental and thereby immune operation of government. The court reasoned that once a plan of lighting had been implemented, negligence in implementation would provide grounds for liability. Similarly, in the case at bar, once a plan for public travel was implemented, liability may be imposed for the negligent design or maintenance of the travel system. This analysis requires no departure from long established "hornbook" rules. It requires nothing more than re-

focusing from the phantom question of the duty to install a sidewalk to the actual situation of a negligently designed and installed system for pedestrian and vehicular traffic which leaves the pedestrian no choice whatever but to expose himself to the danger of motor vehicles on the same pathway.

What maintenance steps the governmental entity should undertake to maintain a reasonably safe system of travel is a question for the jury to decide. Whether warning signs would be sufficient or whether painted lanes for pedestrians and vehicles or both signs and painted lanes are needed or whether the use of the way is such that reasonable care requires a separate sidewalk are not questions of law for the courts but rather questions of fact which a jury can most appropriately answer. The duty question, the only question of law for the court, has long been established to be that a municipal corporation has the duty to exercise ordinary care to maintain a public improvement in a reasonably safe condition. The jury question is simply whether the single way for both pedestrians and vehicles fulfills that duty of ordinary care.

There is no question of immunity involved here because the last sentence of par. 3—103(a) provides: "The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that is is not reasonably safe." By the express application of par. 3—103 which constitutes Illinois' scheme of local governmental immunity, the governmental entity which creates a dangerous pathway for pedestrians by requiring their traverse of vehicular ways must be liable for creating a condition that is not reasonably safe. At the very least, this should be a jury question, perhaps subject to evidence in the form of expert testimony about reasonably safe designs for pedestrian and vehicular traffic.

The City in this case can be held liable under par. 3—103(a) because the execution of the plan adopted by the City has created a condition that is not reasonably safe.

> "* * * A city may reserve portions of a street for pedestrians and portions thereof for the use of vehicles, only, and portions thereof for both pedestrians and vehicles. Sidewalks are usually made for pedestrians only, and street crossings, for both pedestrians and vehicles. Cities are required to use reasonable care to keep street crossings in reasonably safe condition for pedestrians while in the exercise of reasonable care and caution. This is not denied by appellant. The true rule in all cases, we think, is that a city is only required to maintain the respective portions of its streets in reasonably safe condition for the purposes to which they are re-

spectively devoted by the intention and sanction of the city." *Maxey v. City of East St. Louis* 158 Ill.App. 627, 629-630.

"* * * The control of the streets of cities was not put into their hands for the purpose that they might plan or order that the streets should be made dangerous or unsafe for the public to travel thereon; nor would such control put into their hands for the purpose that they might plan or order the streets should remain in an unsafe or dangerous condition, if previously dangerous; but such control was given to them for the sole purpose that they should make and keep the streets safe and convenient for the traveling public; and we think it was put into their hands as a mandatory duty, which they have no right or discretion to evade or avoid. * * * Such action would be substantially the same as planning and creating a public nuisance." *Gould v. Topeka,* 32 Kans. 485, 4 P. 822.

If pedestrians regularly use a part of the public street with the city's knowledge, the city has a duty to keep such a street reasonably safe for pedestrians, even though no paved walkway has been actually constructed. For example, in *Oklahoma City v. Marshall,* 197 Okla. 302, 169 P.2d 1020, in affirming a verdict for a pedestrian injured by an obstruction on an unpaved walkway the court stated:

"It is contended that since the City had not recognized the need for a sidewalk in this area and it was not incumbent upon it to construct or maintain a sidewalk in this locality, the City is not guilty of negligence. We cannot agree with this contention. The evidence discloses that the walkway was much used, and that the City had constructive notice of such use of that part of the street by pedestrians." 169 P.2d at 1021.

In *City of Atchison v. Mayhood,* 69 Kan. 672, 77 P. 549, defendant city claimed that by not building a sidewalk, it was not liable for negligence. The court said:

"The position of plaintiff in error could be sustained only by holding that a city could never be liable for injuries received by reason of the condition of the sidewalk area in a public street unless it had undertaken to build and maintain thereon an artificial walk, or otherwise by affirmative action to fit it for use as a footway. Such a view conflicts alike with reason and authority. It is justly held that where, for a term of years, there has been a general use by pedestrians of the part of the public street lying outside the improved portion, the city may be deemed to have recognized such use and assumed the responsibility for its being made

safe, although no artificial sidewalk has been constructed." 69 Kan. at 674.

(See also *James v. City of Portage,* 48 Wis. 677, 5 N.W. 31; *Aston v. Newton,* 134 Mass. 507, 45 Am.Rep. 347; *Davis v. City of Rome,* 37 Ga. App. 762, 142 S.E. 171; *City of Duncan v. Woods,* 194 Okla. 371, 151 P.2d 923; *City of Roanoke v. Sartini,* 123 Va. 415, 96 S.E. 763; *Rush v. City of Globe,* 56 Ariz. 530, 109 P.2d 841.) Notice to the city of pedestrians' use of the street can be actual or constructive; where there are no sidewalks, a city should anticipate the use of the street by pedestrians. *Hack v. City of Pittsburg,* 145 Kan. 383, P.2d 580.

Illinois decisions have also recognized these rules. In *City of Beardstown v. Smith,* 150 Ill. 169, 37 N.E. 211, a street was crossed by a "beaten and continuous path" commonly used by pedestrians, although no artificial street crossing had been constructed by the city. The city dug a ditch across this path, into which ditch the plaintiff fell and was injured. In affirming a judgment for the plaintiff, the Supreme Court said:

> "We are not prepared to hold that the duty of a city to keep its street crossings in a reasonably safe condition for the use of foot-passengers arises only when it sees fit, in the exercise of its discretion, to construct an artificial crossing over the street. And much less are we disposed to hold that, after a street-crossing has been established, de facto, by public use, the city is at liberty, merely because no artificial crossing has been constructed, to intersect the crossing which the public have established for themselves, with dangerous ditches and pit-falls. We are of the opinion that, under the facts which the evidence in the case tended to establish the duty of the city to keep the crossing in question in a reasonably safe condition and repair *for the use of pedestrians* had arisen, and that there was no material error in the instructions by which that duty was sought to be declared and enforced." (Emphasis supplied.) 150 Ill. at 174-175.

In *Graham v. City of Rockford,* 142 Ill.App. 306, it was held that notice to a city of the dangerous condition of a sidewalk will be implied from lapse of time. *Graham* was affirmed in 238 Ill. 214, 87 N.E. 361, where the court noted that the city had the same duty to keep the place of the accident, although technically not a street or a sidewalk, in reasonably safe condition co-extensive with the duty towards a street or a sidewalk. The accident had occurred on a plank crosswalk.

The fact that there were no structural defects in the way in question should present no problem because "it is not only structural defects that can create a dangerous condition; it may consist of a condition of property, the use of which in a manner reasonably foreseeable creates a

danger of injury." (*Quelvog v. City of Long Beach,* 86 Cal.Rptr. 127.) In *State v. Webster,* 504 P.2d 1316, the Supreme Court of Nevada said at page 1319:

"In Pardini v. City of Reno, 50 Nev. 392, 401, 263 P. 768, 771 (1928), this court said: '(W)here a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the injury, it is actionable negligence not to construct and maintain such railing or barrier.' The possibility of liability by the city in that case was not predicated on its failure to construct a guardrail in accordance with a plan, but on its failure to construct one at all. The failure of the city to construct a guardrail in both Harrigan v. City of Reno, supra, as the failure of the State in this case to install a cattle guard at the entrance to the controlled-access freeway, came at the operational level, after the discretionary decision had been made. Where a cattle guard is reasonably necessary for the security of the traveling public on a controlled-access freeway, the failure to install it renders the State amenable to suit."

In *Harrigan v. City of Reno,* 475 P.2d 94, the Supreme Court of Nevada held that alleged negligent conduct of a city in omitting danger signs and guard rails from the edge of a city parking lot next to a dropoff was part of an operational phase of a parking lot project and was actionable, notwithstanding the statute exempting the city from liability for acts of discretion.

In *Mayer v. Housing Authority of Jersey City,* 210 A.2d 617, the Supreme Court of New Jersey said at page 619:

"An integral element to be considered in the question of the existence of a duty is the factual determination whether there exists a reasonable foreseeable danger against which the defendant should protect the plaintiff. The test has been said to be whether the reasonably prudent person would recognize and foresee an unreasonable risk or likelihood of harm or danger to others. [Citations.] The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another."

That someone would be injured by the chaotic conditions created by the traffic plan put into execution by the City of Carbondale was not only foreseeable, but absolutely predictable. In my opinion the facts alleged in the plaintiff's complaint stated a cause of action.