HOWARD BOENDER, Appellee, vs. THE CITY OF HARVEY,
Appellant.

*Opinion filed June 20, 1911—Rehearing denied October 11, 1911.*

1. MUNICIPAL CORPORATIONS—*city is only required to use reasonable care to keep streets reasonably safe for travel.* The only duty cast upon a city with respect to its streets is to use reasonable care to keep the respective portions of the streets in reasonably safe condition for the purposes for which they are intended.

2. SAME—*municipal corporations are not insurers against accidents from defects in streets.* Municipal corporations are not liable for every accident occurring within their limits from defects in the streets, but the defects must be such as could have been foreseen and avoided by ordinary care on the part of the city authorities.

3. SAME—*city must have had actual or constructive notice of defect.* Whether the defect in a street from which an injury results was caused by the city or a third person, the city is not liable for the injury unless it had actual notice of the defect or of such facts and circumstances as amount to constructive notice.

4. SAME—*question of what is negligence depends upon location and use of streets.* A city is bound only to use reasonable care to keep its streets in reasonably safe condition for public travel, and what may be negligence in that regard in case of a street in a densely populated and much frequented part of the city may not be negligence in case of a street which is little used.

5. SAME—*when there can be no recovery against city for injury.* A milkman injured by tripping over a stone near the side of a street when running from his wagon to a house to deliver milk cannot recover from the city where no notice to the city, actual or constructive, of the presence of the stone is shown.

6. SAME—*whether city had notice of defect may be a question of law.* Ordinarily it is a question of fact for the jury whether a city has had notice of the defect in a street, but when the undisputed evidence is so conclusive that but one reasonable inference can be drawn therefrom it becomes a question of law for the court.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

FREDERIC R. DEYOUNG, for appellant.

McCASKILL & McCASKILL, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an action of trespass instituted by the appellee against the appellant in the circuit court of Cook county for injuries alleged to have been received by him between four and five o'clock in the afternoon of July 16, 1904, in the city of Harvey, by tripping and falling against a pile of timbers in the parkway of Center avenue. The trial resulted in a verdict of $750 in favor of appellee, which was affirmed on appeal to the Appellate Court for the First District. A certificate of importance being granted, this appeal followed.

Center avenue runs north and south and is eighty feet wide. At the time of the accident there was on each side of the street a cement sidewalk five feet four inches wide, about eight feet from the lot line. Between the sidewalk and the street proper there were strips on each side of the street about eight feet wide, called by the witnesses "parkways." Between the parkways there was an unpaved roadway about thirty-seven feet in width. On each side of this roadway, next to the parkways, were shallow ditches or gutters scraped out and formed from the natural earth, the slope next to the roadway being less sharp or abrupt than that next to the parkway. On the parkway on the east side of the street, in front of some vacant lots, there were piled, in from two to four tiers, six or more house-moving timbers, each about thirty feet long and about a foot square. Some weeds and grass were growing up about them, but they were in plain sight and had been lying there for several months. While there is a controversy on the point, the evidence most favorable to appellee is to the effect that there were weeds and grass not more than a foot high in the gutter by these timbers. Appellee swore that at the time of the accident he was a milkman, seventeen years of age, and was delivering milk from his wagon to customers

on each side of Center avenue; that just before the accident he had crossed from a house near by to his wagon, and after filling a small milk can stepped out with it in his hand while the horse was walking and started rapidly south-east from the center of the traveled road, intending to cross the parkway just south of the timbers; that as he was crossing the gutter he tripped and fell against the south end of the timbers, injuring his kidneys quite seriously; that when he got up he saw for the first time a stone in the gutter, about a foot and a half or two feet south of the south end of the timbers and west of their west edges, and that he had fallen by reason of tripping on this stone. One of his witnesses (Hill) testified that having heard of the accident he went that evening, after dark, to that location, and on lighting a match saw a stone lying about four feet west of the timbers and a little south; that it was in the west slope of the ditch but not in the traveled portion of the road; that he could not tell just its location, because it was dark; that the weeds about it were six or eight inches high; that from the appearance of the weeds, by the light of the match, he did not think the stone had been there a great while but might have been several days. He further testified that it weighed about twenty pounds and that he removed it, but what he did with it is not stated. No other persons testified that they had ever seen the rock there. Neither the policeman who traveled his beat along there six or seven times on the day of the accident, nor any of the near by residents, had noticed it.

No arbitrary rule can be laid down as to defects in highways or streets for which municipalities will be liable or as to the degree of care required of the person injured. Municipal corporations are not insurers against accidents. The object to be secured is reasonable safety for travel, considering the amount and kind of travel which may fairly be expected upon the particular road or street. A highway in the country need not be of the same character as a street

in a large city. (*Molway* v. *City of Chicago,* 239 Ill. 486.)
All portions of a public street, from side to side and end
to end, are for public use in the appropriate and proper
method, but the only duty cast upon the city is that it shall
maintain the respective portions of the street in reasonably
safe condition for the purposes to which such portions of
the street are devoted. (*Kohlhof* v. *City of Chicago,* 192
Ill. 249; 2 Dillon on Mun. Corp.—2d ed.—sec. 1019.)
The city is not bound, under the law, to keep its streets
absolutely safe. It is only bound to use reasonable care to
keep its streets reasonably safe for ordinary travel there-
on by persons using due care and caution for their safety.
(*City of Salem* v. *Webster,* 192 Ill. 369; *Village of Lock-
port* v. *Licht,* 221 id. 35.) "The obstructions or defects
in the streets or sidewalks of a city, to make the corpora-
tion liable, must be of such a nature that they are in them-
selves dangerous, or such that a person exercising ordinary
prudence cannot avoid danger or injury in passing them,—
in general, such defects as cannot be readily detected." *City
of Aurora* v. *Pulfer,* 56 Ill. 270.

Municipal corporations cannot be held liable for every
accident that occurs within their limits, but the defect must
be such as could have been foreseen and avoided by ordi-
nary care and prudence of the city authorities. The theory
upon which the appellee has presented his case is, that the
proximate cause of the accident was the stone in the gutter.
Whether a defect in the street is caused by the act of a
third person or the failure of the city to repair in general,
the city is not liable unless it had notice of the defect, or
of such facts and circumstances as would by the exercise
of reasonable diligence lead a prudent person to such knowl-
edge. (*City of Chicago* v. *Stearns,* 105 Ill. 554; Elliott on
Roads and Streets,—2d ed.—626.) It is not claimed that
the city had any actual notice of the stone. The evidence
fails to show constructive notice. Generally, it is a ques-
tion for the jury whether a city has had notice of a defect

in a street. Where the facts are undisputed and but one reasonable inference can be drawn from them, it then becomes a question for the court. *Bell* v. *City of Henderson,* 74 S. W. Rep. (Ky.) 206; *City of Chicago* v. *Murphy,* 84 Ill. 224; *Elam* v. *Mt. Sterling,* 20 L. R. A. (N. S.) 512, note on p. 731.

On account of lack of notice there could be no recovery in this case.

The judgments of the circuit and Appellate Courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*