Letitia K. McKinley, Appellee, v. City of Chicago, Appellant.

Gen. No. 39,655.

Opinion filed February 14, 1939.

Barnet Hodes, Corporation Counsel, for appellant; Alexander J. Resa, Arthur Chittick and Lionel J. Berc, Assistant Corporation Counsel, of counsel.

Gustav E. Beerly, of Chicago, for appellee.

Mr. Justice John J. Sullivan delivered the opinion of the court.

This appeal seeks to reverse a judgment for $750 rendered against defendant, city of Chicago, in an action brought by plaintiff, Letitia K. McKinley, for damages for personal injuries alleged to have been suffered by her as the result of the city's negligence.

Plaintiff's complaint alleged substantially that there was a concrete sidewalk on the east side of Winthrop avenue, extending northward from Lawrence avenue, and "a space commonly called a parkway between said sidewalk and the paved roadway of said street"; that it was the duty of defendant "to keep and maintain said street, including said parkway, in a reasonably safe and proper condition for the use of the public travelling thereon and using same"; that disregarding its duty defendant wrongfully and negligently permitted "said street, particularly said parkway, to become and remain in an unsafe and dangerous condition and negligently permitted and suffered a trap, pitfall, snare or hole to exist and to remain in the said parkway immediately next to said sidewalk, which said trap, pitfall, snare or hole was, to-wit: eight inches deep, and was a menace to the public rightfully using said street"; that "said dangerous condition and said trap, pitfall, snare or hole had existed for a long period of time prior to and on December 18, 1933; that the defendant knew or by the exercise of reasonable care, should have known of said dangerous and unsafe condition"; that "on December 18, 1933, plaintiff, while in the exercise of reasonable care and caution for her own safety, and without any knowledge of the said unsafe

and dangerous condition as above described, was walking on the said sidewalk, and at a point about sixty feet north of the north curb line of said Lawrence avenue, stepped from said sidewalk onto the said parkway for the purpose of entering an automobile parked at the curb at said point, and by reason of the said dangerous and unsafe condition and said trap, pitfall, snare or hole in the parkway,'' fell and sustained serious injuries.

The evidence disclosed that Lawrence avenue and Winthrop avenue are public streets in the city of Chicago; that Lawrence avenue extends east and west and is intersected by Winthrop avenue, which extends north and south; that on the night of December 18, 1933, plaintiff and her husband on their way to attend a show at the Uptown Theatre, which is on Broadway near Lawrence avenue, parked their automobile facing north on the east side of Winthrop avenue at a distance variously estimated at from 60 to 80 feet north of Lawrence avenue; that plaintiff's husband stepped out of the car on the left side and she alighted from it on the right side, which was closest to the curb; that plaintiff walked around the car and joining her husband proceeded west with him across Winthrop avenue and thence to the theatre; and that after the show, about 10 o'clock, plaintiff and her husband walked east on Lawrence avenue to the east sidewalk of Winthrop avenue and then north on said sidewalk to reach the place where their car was parked.

The pertinent testimony of plaintiff's husband as to what happened thereafter is as follows: ''I was on Mrs. McKinley's right, had her arm with my left hand. We walked north on the sidewalk about 60 or 70 feet, if I recall it, and then Mrs. McKinley started to step off the sidewalk, kind of diagonally, direct to come to the car, almost abreast of the car, as she stepped off the sidewalk she fell forward, and then came down in

a heap with her left foot under her body. . . . It was dark at that point.'' He further testified that at the place of the occurrence the level of the parkway was about 6 inches lower than the sidewalk level ''and then as it went toward the curb it sloped off until it was about 8 inches''; and that ''at the place Mrs. McKinley sank'' the level of the parkway was about 8 inches lower than the sidewalk level, ''as you would step out about eighteen inches, it was about eight inches deep.''

Plaintiff testified that she walked north from Lawrence avenue on the sidewalk on the east side of Winthrop avenue, with her husband at her right holding her arm; that after proceeding about 60 feet ''just as we saw the car, I went to step down, and I stepped into a hole—my husband had my arm—I fell over on my leg, and just sort of fell in a heap''; that prior to that evening ''we never parked our car . . . in this location here on Winthrop avenue''; that it was quite dark over there; that before she stepped ''over this side-walk'' she did not know ''there was a depression or decline there''; that ''it looked as though it was even . . . it was dark, you could not see . . . I just sort of stepped into a hole''; and that she ''never had occasion to use that parkway, or that sidewalk, before.''

The pertinent portions of plaintiff's testimony on cross-examination are as follows:

''Q. Now, as you were walking immediately prior to your fall, where were your eyes directed?

''A. We were just walking along talking.

''Q. Did you look at the sidewalk?

''A. We were walking on the sidewalk. I looked up and saw the car. We were walking towards the car, when I stepped off.

''Q. You looked up and saw the car?

''A. I looked up and saw the car.

''Q. Did you look to see where you were walking?

"A. Of course; we were walking. I naturally looked to walk towards the car.

"Mr. Berc: At any time during the period you were walking from Lawrence avenue until the time you fell, did you look where you were walking?

"A. You don't watch every step.

"Q. Did you look?

"A. It was quite dark.

"Q. Could you see the cars parked along the curb?

"A. You can see the cars parked along the curb.

"Q. Did you look around?

"A. As we stepped, we looked.

"Q. Was it light enough to see the edge of the sidewalk?

"A. It was light enough to see the edge of the sidewalk, but you could not see this hole.

"Q. Could you see the curbstone?

"A. How do you mean, the edge of the sidewalk?

"Mr. Berc: The edge of the parkway, the street, do you know what the curb is?

"The witness: Yes.

"Q. Could you see the curbstone?

"A. I did not pay any attention to that. I did not get that far.

"Q. At any time during the course of your walk from Lawrence avenue, did you see the curbstone?

"A. I did not get that far. I just stepped off the sidewalk, and I fell.

"Q. In the course of that sixty-foot walk, did you at any time see the curbstone?

"A. I did not get that far.

"Q. What is that?

"A. I fell before I noticed it.

"Q. Before you fell, did you notice the curbstone?

"A. I did not look for the curbstone. I just fell off the sidewalk.

"Q. Was it dark at the corner of Lawrence and Winthrop as it was at the place you fell?

"A. It was bright.

"Q. Now the difference in level between the parkway and the sidewalk, that extended all the way from where you fell up to Lawrence avenue, didn't it?

"A. I did not notice that. It was dark as I stepped off.

"Q. I am talking about the corner of Lawrence avenue and Winthrop; it was light?

"A. It was bright there.

"Q. Did you look at the sidewalk any time in the course of your sixty-foot walk?

"A. I don't think so.

"Q. You don't think so?

"A. You notice it as a sidewalk, but you don't look down.

"Q. You could see the edge of the sidewalk? It was light enough for that?

"A. Yes.

"Q. You could see the cross-markers in the slabs?

"A. It was bright enough, walking.

"Q. Could you see the steps—could you make out the outline of the entrance to this apartment building at the place where you fell?

"A. You could if you looked that way.

"Q. Could you make out it was a step at these entrances here?

"A. It was probably light enough to see that.

"Q. What is the color of the sidewalk?

"A. Like any sidewalk.

"Q. What is your idea of what the color is?

"A. I imagine gray.

"Q. What was the color of the parkway, did that make any impression on your memory, the parkway?

"A. It was dark."

Charles Eason, testifying in plaintiff's behalf, stated that he was the janitor of a building near the scene of the accident; that he was familiar with the sidewalk and parkway in question; and that the sidewalk at the

point where plaintiff stepped off same was and had been for 17 years about 7 inches higher than the parkway.

Plaintiff introduced in evidence as Exhibits 1 and 2 two photographs which she, her husband and Eason testified truly reflected the condition of the sidewalk, parkway and surroundings from Lawrence avenue to a point some distance north of the place of the accident as they were on the evening it occurred.

Defendant's theory as stated in its brief is that "there was no hole at the place in question; that even if it could be said that the evidence shows the existence of a hole, there is a total absence of proof to establish actual or constructive notice to the city of its existence; that a difference of six inches between the levels of the sidewalk and the adjoining parkway affords no basis for a recovery; and that the plaintiff was not in the exercise of due care and caution for her own safety at the time of her injury and without her negligence the injury could not have occurred. The city also contends that the notice required by the statute was not given."

The statement appears in plaintiff's brief that "by observing Exhibit No. 1 it can be seen that at the intersection of the sidewalk on Winthrop Avenue with the sidewalk on the north side of Lawrence Avenue, the parkway was almost even with the sidewalk, and continued so for approximately 50 feet" and that from that point for a distance of about ten feet north "there is a decided drop in the parkway testified to as 6 inches . . . and 7 inches deep," but even a casual examination of the photograph referred to reveals that, while the difference in the levels of the sidewalk and parkway at the point where the accident occurred of 6 or 7 inches was somewhat greater than the difference in such levels south to the north sidewalk of Lawrence avenue, there was a marked difference in the parkway

and sidewalk levels continuously north from said north sidewalk of Lawrence avenue.

In her testimony in the trial court plaintiff repeatedly stated that she stepped from the sidewalk into a "hole" in the parkway, while her husband apparently saw no "hole" because he made no mention of any "hole" in the parkway in his testimony. He merely stated that the surface of the parkway was 6 inches lower than the level of the sidewalk immediately adjacent to same; that it sloped downward so that it was 8 inches lower than the sidewalk at the curb; and that it was 8 inches lower at a point about 18 inches from the sidewalk where plaintiff stepped on said parkway.

By stating that she stepped into a "hole in the parkway" the impression must have been conveyed to the court and jury by plaintiff that she stepped into a cavity or opening in the parkway that extended below its surface. However, it is now stated in effect in plaintiff's brief that when she testified that she stepped into a "hole" in the parkway she did not intend to use the word "hole" in the meaning ordinarily attributed to that word but merely that she stepped from the sidewalk to the parkway, which was from 6 to 8 inches below the sidewalk level, and that the parkway itself constituted the "hole." Plaintiff was compelled to take this position here because her husband testified that she did not step into a hole and the photographs which she placed in evidence show conclusively that there was no hole or even a break in the surface of the parkway where she testified she stepped and fell. An even stronger reason which forced her to change her position as to stepping into a "hole" was that not a particle of evidence was offered in the trial court that the city had either direct or constructive notice of the existence of a hole in the parkway at the place in question.

With the "hole" in the parkway eliminated from consideration and with the parkway itself at a lower level constituting the hole, according to plaintiff, we have this situation presented. Plaintiff and her husband, leaving the theatre to go to their automobile which was parked alongside of the east curb of Winthrop avenue, about 70 feet north of Lawrence avenue, walked east on the north sidewalk of Lawrence avenue until they reached the east sidewalk of Winthrop avenue. It was brightly lighted at that point and the photographs show the south end of the parkway in question considerably below the level of both the Lawrence and Winthrop avenue sidewalks. Plaintiff and her husband walked north about 60 feet on the east sidewalk of Winthrop avenue to a point almost opposite their car, where she stepped off said sidewalk onto the parkway and fell. According to her it was dark where she stepped off, but she could see the color of the sidewalk and the edge of same and she observed a darker color to the west of the sidewalk. The photographs in evidence portray the surface of the parkway as practically flat and smooth from a point several feet north of the place of the accident to the north sidewalk of Lawrence avenue and there were no obstructions on or dangerous defects in the parkway at or near where plaintiff stepped onto same.

It is insisted that under its recognized duty to use reasonable care to keep its streets and sidewalks in a reasonably safe condition for the accommodation of the public using same, the city should not be subjected to a charge of negligence under the undisputed evidence presented by the record in this case, which in its final analysis neither established nor tended to establish any more than that there was the difference heretofore indicated in the levels of the sidewalk and adjacent parkway, the surface of the latter being practically smooth and flat.

Defendant's principal contention is that plaintiff's fall and injury were due to her total failure to exercise any degree of care whatsoever for her own safety and that the difference in the levels of the sidewalk and parkway merely constituted a condition which made it possible for her negligence to produce the result it did.

We have carefully examined the authorities to which our attention has been called and many others and have found no reported case wherein the facts were at all comparable with the facts here. All such cases were concerned with dangerous obstructions or defects of one kind or another in the parkway or with what were characterized in some of them as dangerous pitfalls, traps or snares. It is in the latter category that plaintiff seeks to have her case considered. Was the condition of the parkway where she fell, as disclosed by her own evidence, such as to constitute it a pitfall, trap or snare? It must be conceded that the parkway in question consisted of earth that was solidly packed and that its surface was free from dangerous defects. Although, as heretofore shown, plaintiff testified that she stepped into a hole in the parkway, no such claim is advanced in this court. All that she contends here is that her fall and resultant injury were caused by her stepping down 6 or 8 inches from the sidewalk to the surface of the parkway and that the maintenance by the city of the sidewalk and parkway at the levels indicated was a violation of defendant's duty to exercise reasonable care to keep its streets and sidewalks in a reasonably safe condition for the use and accommodation of the public. Was the city negligent—and no other negligence is now asserted—merely because it maintained the sidewalk and parkway at the aforesaid levels?

In discussing what constituted negligence on the part of a municipality in connection with the maintenance

of its streets and sidewalks in *Boender v. City of Harvey*, 251 Ill. 228, the court said at pp. 230, 231:

"No arbitrary rule can be laid down as to defects in highways or streets for which municipalities will be liable or as to the degree of care required of the person injured. Municipal corporations are not insurers against accidents. The object to be secured is reasonable safety for travel, considering the amount and kind of travel which may fairly be expected upon the particular road or street. A highway in the country need not be of the same character as a street in a large city. (*Molway v. City of Chicago*, 239 Ill. 486.) All portions of a public street, from side to side and end to end, are for public use in the appropriate and proper method, but the only duty cast upon the city is that it shall maintain the respective portions of the street in reasonably safe condition for the purposes to which such portions of the street are devoted. (*Kohlhof v. City of Chicago*, 192 Ill. 249; 2 Dillon on Mun. Corp. —2d ed. — sec. 1019.) The city is not bound, under the law, to keep its streets absolutely safe. It is only bound to use reasonable care to keep its streets reasonably safe for ordinary travel thereon by persons using due care and caution for their safety. (*City of Salem v. Webster*, 192 Ill. 369; *Village of Lockport v. Licht*, 221 id. 35.) 'The obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person exercising ordinary prudence cannot avoid danger or injury in passing them—in general, such defects as cannot be readily detected.' *City of Aurora v. Pulfer*, 56 Ill. 270.

"Municipal corporations cannot be held liable for every accident that occurs within their limits, but the defect must be such as could have been foreseen and avoided by ordinary care and prudence of the city authorities."

In the instant case there was no defect of such a nature that it was in itself dangerous. There was no such defect in or on the parkway that a person exercising ordinary diligence could not have avoided danger or injury in passing over said parkway. Even though we assume that the difference in the levels of the sidewalk and parkway was a defect, it was such a defect as could have been detected by the exercise of even the slightest degree of care.

We are impelled to hold that under the undisputed evidence the city was not guilty of actionable negligence in this case. There was neither obstruction, defect nor pitfall in the parkway that caused plaintiff's fall and injury. The difference in levels between the sidewalk and parkway at the point in question was no greater than the step-down from many of the heavily travelled sidewalks throughout Chicago to adjacent street or alley pavements. It has never been held, in so far as we have been able to ascertain and in our opinion it could not be held, that liability attaches to a city for negligent maintenance of its streets and sidewalks where a person falls in stepping down 6, 7 or 8 inches from a sidewalk to a smooth, level street or alley pavement.

As stated in *Boender v. City of Harvey, supra,* ''all portions of a public street, from side to side and from end to end, are for public use in the appropriate and proper method, but the only duty cast upon the city is that it shall maintain the respective portions of the street in reasonably safe condition for the purposes to which such portions of the street are devoted.'' Granting that plaintiff in crossing the parkway from the sidewalk to enter an automobile standing at the curb was unquestionably making an appropriate use of same, we repeat that there is no evidence in the record that the parkway was not maintained in a reasonably safe condition ''for public use in the appropriate and proper method'' by a person crossing same. The mere

fact that the city may have contemplated raising the level of the parkway and sodding or planting it with grass seed can have no bearing on the reasonably safe condition in which the parkway was maintained at the time of plaintiff's injury. The city was not required by law to maintain such parkway at a level even with the sidewalk or at any certain level.

It is uncontroverted that the northeast corner of Winthrop and Lawrence avenues, just about 60 feet south of the place of the accident, was brilliantly illuminated. There was a street lamp within a few feet of where plaintiff fell, but there was a conflict in the evidence as to whether or not this lamp was lighted at the time. According to plaintiff this street lamp was not lighted and "it was dark" but she could see the edge of the sidewalk and noted that, while the sidewalk was gray in color, "it was dark" beyond the edge of same. Plaintiff was unfamiliar with this parkway and had never crossed it before. She stated that from the time she left Lawrence avenue, which was brightly lighted, to walk north on Winthrop avenue with her husband, she was on the portion of the east sidewalk nearest the parkway, but that she did not notice that the parkway was lower than the sidewalk or that the difference in the levels of the sidewalk and parkway increased as she proceeded north. In other words, she stepped off blindly into space without any knowledge of the distance downward she was stepping. The parkway was only 6 inches lower than the sidewalk immediately adjacent thereto and it was her duty, in the exercise of ordinary care for her own safety under the circumstances described by her, to at least have felt her way with her forward foot before venturing precipitately into a dark, unfamiliar place. The fact that she thought that the parkway was even with the sidewalk does not excuse her lack of diligence. If there was sufficient light in the vicinity to render visible to

plaintiff the difference in the levels of the sidewalk and parkway, it was her duty, in the exercise of ordinary prudence, to have seen and noted such difference before stepping down from the sidewalk to the parkway. In our opinion under the evidence submitted by plaintiff herself, she was guilty of contributory negligence as a matter of law.

Such other points as have been urged have been considered, but in the view we take of this case we deem it unnecessary to discuss them.

Plaintiff's motion heretofore made and reserved to hearing to strike the report of proceedings at the trial from the record on appeal and to affirm the judgment of the trial court is at this time denied.

For the reasons stated herein the judgment of the circuit court is reversed, and, inasmuch as it would serve no useful purpose to remand the cause for a new trial, judgment is entered here in favor of defendant and against plaintiff.

*Judgment reversed and judgment here.*

BURKE, P. J., and FRIEND, J., concur.