(No. 34981.—

Margaret B. Lau, Appellee, vs. West Towns Bus Company, Appellant.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

EDWARD S. MACIE, and PAUL F. ELWARD, both of Chicago, for appellant.

JAMES A. DOOLEY, of Chicago, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook County, which was entered upon a jury verdict in favor of plaintiff in the sum of $75,000. In addition to alleging error in instructing the jury, and that the verdict was excessive and contrary to the evidence, defendant contends that the court never acquired jurisdiction over it, and that the entry of judgment was an unconstitutional deprivation of its property without due process of law. Upon this

debatable constitutional issue defendant appeals directly to this court.

On May 10, 1952, plaintiff was injured while riding on a bus operated by Raymond T. O'Keefe, Jr., as reorganization trustee in bankruptcy, in the United States District Court, in the matter of Chicago & West Towns Railways, Inc., a corporation, debtor. The injury occurred when the bus collided with a motor vehicle driven by William Hathaway. On March 6, 1953, plaintiff filed suit against both O'Keefe, as trustee, and Hathaway, alleging that her injuries resulted from their joint negligence, and praying judgment in the sum of $35,000. Both defendants appeared and answered, denying liability.

Thereafter, and while this cause was pending, O'Keefe, as trustee, submitted a plan in the Federal District Court for reorganization of the debtor. On July 2, 1954, a consummation order was entered in the bankruptcy proceeding by which all of the debtor's property was vested in the reorganized Chicago & West Towns Railways, Inc., a corporation. The order further provided in part as follows:

"(6) The Company shall have the right, if it so elects, to be substituted at its own cost and expense as a party in lieu of the Debtor or of the Trustee in any or all litigation or proceedings by or against the Debtor or the Trustee or to which either of them were parties, now pending, on appeal or otherwise, or to continue such litigation or proceedings in the name of the Debtor or of the Trustee, and the Trustee shall be relieved of any further duty or responsibility in respect of such litigation or proceedings.

"(7) The Company is authorized and directed to pay, in due course, all costs and expenses of administration of the estate of the Debtor which shall be a charge upon the properties herein authorized to be transferred and conveyed to the Company, including costs of printing and mimeographing documents required for consummation of the Plan and the charges of fiduciaries and agents for performing services

thereby required, and allowances of fees and reimbursement of expenses heretofore or hereafter incurred to the extent allowable under Chapter X of the Bankruptcy Act, and all other expenditures and allowances which may be approved or made by the Court to the extent that they have not been paid by the Trustee. The Company shall assume at the Closing Time and pay in due course without the further order of this Court, the following claims: * * *

"(d) All claims and obligations falling within the classes of claims which the Trustee has been authorized to incur or pay in the operation of the properties of the debtor or otherwise by any order or orders of the Court, when the amounts thereof have finally been determined, and to the extent that they have not been paid by the Trustee.

"The obligation of the Company to pay such claims shall in each case be subject to any and all applicable statutes of limitation, without any tolling thereof by virtue of this order. The Board of Directors of the Company is hereby authorized to provide for the adjustment, compromise, payment, discharge, installment payment, or other disposition by the Company of all claims, liabilities and obligations.

"(8) From and after the Closing Time there shall be no liability upon the Trustee for any obligations incurred by him in his official capacity as such Trustee growing out of his operation theretofore of the property and business of the Debtor pursuant to the authorizations of this Court, and the Company shall be and become liable for any and all such obligations and shall indemnify and hold the Trustee harmless against such obligations."

Thereafter the corporation took over the operation of the bus line, and on November 29, 1956, changed its name to West Towns Bus Company. On February 15, 1957, present counsel for defendant entered their substitution of appearance for defendant O'Keefe, as trustee, although he had previously been discharged as such trustee. On January 29, 1958, on motion of plaintiff for leave to amend

her complaint *instanter*, the *ad damnum* was increased from $35,000 to $175,000; and on February 28, 1958, on plaintiff's motion, the trial court dismissed Hathaway as a party defendant and substituted in lieu of defendant O'Keefe, as trustee, the present defendant, West Towns Bus Company, herein referred to as defendant.

The trial before the jury began on March 26, 1958. Present counsel appeared for defendant and moved for leave to file its appearance and answer. The answer admitted the operation of the motor bus by O'Keefe, as trustee, and the collision, denied any act of negligence on the part of O'Keefe, as trustee, and the injuries of plaintiff, and averred that defendant was not operating the motor bus at the time of the accident, and that the cause of action against it is barred by the Statute of Limitations. The court denied the motion and ordered that the appearance and answer filed on behalf of O'Keefe, as trustee, stand as the appearance and answer of the defendant, West Towns Bus Company. This motion was renewed on April 1, 1958, at which time the court entered an appropriate written order of denial. On April 2, 1958, judgment was entered on the verdict finding defendant guilty and assessing plaintiff's damages in the sum of $75,000.

Defendant contends that the court had no jurisdiction over it because it was not served with summons; that no cause of action was pleaded or proved against it; and that any cause of action against it is barred by the Statute of Limitations, and in any event, the increase in the *ad damnum* is so barred.

We believe the defendant was properly before the court without service of summons. Section 20 of the Civil Practice Act, (Ill. Rev. Stat., 1957, chap. 110, par. 20,) provides that: "(1) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant. A special ap-

pearance may be made as to an entire proceeding or as to any cause of action involved therein. Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance. * * * (3) If the court sustains the objection, an appropriate order shall be entered. Error in ruling against the defendant on the objection is waived by the defendant's taking part in further proceedings in the case, unless the objection is on the ground that the defendant is not amenable to process issued by a court of this State."

In the case at bar, defendant made no special appearance as required by the statute, and fully participated in the entire trial. We conclude that defendant has appeared generally so as to give the trial court jurisdiction over it. (*Lord* v. *Hubert,* 12 Ill. 2d 83; *People* v. *Estep,* 6 Ill. 2d 127.) Since it clearly appears that defendant had notice of the proceedings, an opportunity to be heard and in fact was heard, the enforcement of the judgment against it is not a denial of due process.

Section 54(1) of the Civil Practice Act, (Ill. Rev. Stat., 1957, chap. 110, par. 54(1),) provides: "(1) Change of interest or liability. If by reason of marriage, bankruptcy, assignment, or any other event occurring after the commencement of a cause or proceeding, either before or after judgment, causing a change or transmission of interest or liability, or by reason of any person interested coming into existence after commencement of the action, it becomes necessary or desirable that any person not already a party be before the court, or that any person already a party be made party in another capacity, the action does not abate, but on motion an order may be entered that the proper parties be substituted or added, and that the cause or proceeding be carried on with the remaining parties and new parties, with or without a change in the title of the cause."

This authorized the substitution of the defendant for O'Keefe, as trustee. Subparagraph 5 of the same section

provides: "Parties against whom relief is sought, substituted under subsections (1) and (2) hereof, shall be brought in by service of process. Service of process on parties substituted under subsections (3) and (4) hereof is not required, but notice shall be given as the court may direct." In the case at bar, the requirement of service of process was eliminated by defendant's appearance and participation in the trial of the cause.

We next consider the plea of the Statute of Limitations. Section 46 of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 46,) liberally provides for amendments, at any time before judgment, introducing any party who ought to have been joined as plaintiff or defendant. Subsection (4) of section 46 provides as follows: "(4) A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (a) the time prescribed or limited had not expired when the original action was commenced; (b) failure to join the person as a defendant was inadvertent; (c) service of summons was in fact had upon the person, his agent or partner, as the nature of the defendant made appropriate, even though he was served in the wrong capacity or as agent of another; (d) the person, within the time that the action might have been brought or the right asserted against him, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him; and (e) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary con-

dition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended."

Defendant contends that section 46 does not permit the amendment increasing the *ad damnum* to relate back to the original complaint for the reason that service was not in fact had upon the defendant, its agent or partner, and that defendant did not know the original action was pending within the limitation period. We believe that the express assumption of the receiver's liabilities and obligations by the defendant under the bankruptcy court's consummation order amounted to an acceptance of the service of process on O'Keefe, as trustee, as service upon an agent of defendant. At all times the bus line was a single entity, the title to which passed from the trustee to the defendant. By the consummation order, defendant stepped into the position of the trustee, O'Keefe, and assumed his obligations. O'Keefe's liability was not personal, but was limited to the trust corpus —the bus line. In taking title to the bus line, the defendant expressly took over the liability of the trustee in connection with the operation of the line during reorganization. As we stated in *Geneva Construction Co. v. Martin Transfer and Storage Co.*, 4 Ill. 2d 273, at pages 287, 289 and 290 : "The present section 46 is the culmination of continuing efforts on the part of the General Assembly to enact a provision under which the relation back of an amended pleading would be governed by considerations of fairness to the litigants, rather than by technical and formal considerations. * * * Statutes of limitation, like other statutes, must be construed in the light of their objectives. The basic policy of such statutes is to afford a defendant a fair oppor-

tunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible. That purpose has been fully served here."

In the case at bar, trustee O'Keefe was liable to the extent of the assets of the bus line, for injuries caused by its negligent operation. Under the consummation order, defendant assumed this liability. There is no reason in law or logic to require plaintiff to first establish liability against O'Keefe, as trustee, and subsequently against his successor in interest. The order substituting trustee O'Keefe's successor in interest as party defendant related back to the original complaint, and the substitution is not barred by the Statute of Limitations. This result is further justified by our decision in *Knickerbocker* v. *Benes,* 195 Ill. 434, in which plaintiff sued for injuries caused by the negligence of a receiver in operating a laundry. Defendents were successors to the assets in the hands of the receiver, but were not made parties to plaintiff's petition until after the statute had run. We there held that damages for injuries arising during the receivership, caused by the neglect of the receiver's agents or employees, are part of the operating expense of the receivership and are payable out of its income or corpus. We concluded that defendants, who received the corpus from the receiver, *pendente lite,* were properly made parties after the Statute of Limitations had run.

Nor do we find error in the amendment of the complaint increasing the *ad damnum* to $175,000. All of the elements of damage were included in the original complaint, and an investigation thereof was necessary to a proper defense. Such amendment was no more than an additional claim for damages arising from an occurrence fully described in the original pleading and has heretofore been regarded as a matter of form rather than substance. (*Geneva Construction Co.* v. *Martin Transfer and Storage Co.,* 4 Ill. 2d 273.) Moreover, section 34 of the Civil Practice Act, (Ill. Rev. Stat., 1957, chap. 110, par. 34,) provides that the prayer

for relief does not limit the relief obtainable except in cases of default. The parties to the bankruptcy proceeding were presumed to know such well settled principles of law, and the contention that the plaintiff was estopped from amending the *ad damnum* is without merit.

Defendant further contends that the verdict was against the preponderance of the evidence; that the court erroneously refused certain of defendant's instructions and its special interrogatory; and that the verdict was excessive.

As to the first contention, it is the function of the jury, subject to the supervision of the trial court, to determine the preponderance of the evidence, and a reviewing court will reverse only if this determination is against the manifest weight of the evidence. *Butler* v. *O'Brien*, 8 Ill.2d 203; *Kahn* v. *James Burton Co.*, 5 Ill.2d 614; *Vandeveer* v. *Preston*, 13 Ill. App. 2d 29.

On May 10, 1952, the plaintiff boarded the bus which was proceeding north on Harlem Avenue. She did not obtain a seat, but stood in the aisle. Other passengers also stood in the aisle, including a large man who was behind her. It is undisputed that the bus stopped suddenly; that this man was thereby thrown forward and into the plaintiff; that he thus struck the plaintiff forcibly and knocked her to the floor of the bus and fell upon her; and that she was thereby injured. Defendant concedes that "there is a sharp conflict as to the evidence immediately preceding the accident." At the time, traffic was heavy, and Hathaway was driving an automobile in the middle north-bound lane beside the bus. He testified that the bus driver swerved to the left and collided with his automobile, hitting the front door. The bus driver testified that Hathaway turned toward the curb and his car struck the bus. There was some evidence that there were boxes in Hathaway's car, obstructing his vision. We have examined the record and noted the conflict in the evidence, but we cannot say that the verdict of the jury was contrary to its manifest weight.

We have examined the instructions given by the court, and believe the jury was fully and accurately instructed concerning both the defendant's and plaintiff's theory of the case. The instructions offered by defendant and refused by the court were either misleading, or completely covered by other instructions. Where several instructions embodying the same legal principle are submitted to the court, it may select the one it sees fit and need not repeat the same proposition of law in different language in separate instructions. (*Wintersteen* v. *National Cooperage and Woodenware Co.,* 361 Ill. 95.) Upon considering the instructions as a series, we find no prejudicial error in the manner in which the court instructed the jury.

Defendant's special interrogatory was ambiguous and couched in terms which presumed negligence of Hathaway in the operation of his automobile—a fact in dispute. It was therefore properly refused.

Defendant fervently urges the excessiveness of the verdict, portrays the comparatively slight increase in the salaries of judges since 1925 in relation to the substantial increase in jury verdicts, and calls upon us to stand as a bulwark against inflation in jury verdicts. However, it has long been the law in Illinois that the amount of a verdict is largely within the discretion of the jury. *Kahn* v. *James Burton Co.,* 5 Ill.2d 614; *Bucher* v. *Krause,* (7th cir.) 200 F.2d 576, cert. den. 345 U.S. 997; *Holsman* v. *Darling State Street Corp.,* 6 Ill. App. 2d 517.

In the case at bar, plaintiff, a woman of 50, sustained a fracture of the right femur requiring surgery, was unable to walk without crutches for almost three years, and presently has a stiffening of the right hip joint and knee. Her condition is permanent and progressive. She has incurred special damages of $1500, and there is testimony that she will have to submit to an arthroplasty to separate the head of the femur from the acetabulum. It is true that the verdict is large in comparison to the expenses of plaintiff, but

we cannot limit compensable damages for pain and suffering to a set percentage of medical, hospital and kindred expenses. Costly surgery may result in complete recovery for one person, while the total of the foregoing expenses incurred by a multiple amputee may be small. Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions. *Johnson* v. *Eckberg,* 94 Ill. App. 635.

We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice.

We therefore conclude that the verdict and judgment below are correct and the judgment is affirmed.

*Judgment affirmed.*