William D. Alexander and Ruth Alexander, Plaintiffs-Appellees, v. Jessie Lanterman, Defendant-Appellant.

Gen. No. 10,419.

Third District.

February 26, 1963.

Gillespie, Burke & Gillespie, of Springfield (Louis F. Gillespie, George B. Gillespie and Stuart Dobbs, of counsel), for appellant.

G. W. Horsley and Robert F. Vespa, of Springfield, for appellees.

ROETH, JUSTICE.

In this case, plaintiff Ruth Alexander recovered a judgment for $11,000 for personal injuries which she sustained and plaintiff William D. Alexander recovered a judgment for $500 for property damage he sustained as a result of an automobile collision. The case was tried by a jury, defendant's post-trial motion was overruled and this appeal followed. Only three assignments of error are made, namely (1) the trial court erred in refusing to withdraw a juror and declare a mistrial because of certain remarks of a witness concerning insurance, (2) the verdict as to Ruth Alexander is excessive, and (3) the trial court erred in refusing to give defendant's instruction No. 16.

The incident giving rise to this lawsuit occurred in the town of Williamsville, Illinois, on Main Street. Main Street extends east and west. It is intersected by a north and south street known as Elkhart Street. To the east of Elkhart Street there are residences on both sides of Main Street. These residences have wide parkways between the sidewalk and curb of Main Street and in addition there is a wide parkway in the center of Main Street separating east and west

bound traffic. About a block west of Elkhart Street, Main Street is intersected by the tracks of a railroad. On both sides of Main Street between Elkhart Street and the railroad tracks there are business establishments and this would appear to be the main business section of Williamsville. In the block between Elkhart Street and the railroad tracks, Main Street is approximately 185 feet wide from curb to curb. There is a sidewalk in front of the business establishments on both sides of Main Street and these sidewalks abut upon the curbing. Cars parking in this one block area to use the business establishments, park at right angles with the curb. At the southwest corner of Main Street and Elkhart there is a grocery store identified as Waggoner's Grocery Store.

On the day in question the defendant parked her car in front of Waggoner's Grocery Store headed into the curb and at right angles with it. There were other parked cars to her left and right and the number is not material. She went into the grocery store to buy some groceries. The plaintiffs, who are husband and wife, live east of Williamsville and had been in Springfield on the day in question. They came down Main Street at about 4:00 p. m. headed east, and the wife intended to stop at Waggoner's to get some groceries. The weather was clear, dry, cold and it was still light outside. While the wife was doing her grocery shopping, the plaintiff William D. Alexander intended to go to the home of his landlord to pay the house rent. William D. Alexander stopped his car in the center portion of Main Street opposite Waggoner's Grocery Store and headed east. The motor was not turned off. Ruth Alexander opened the right hand door and got out of the car. As she got out she was facing in the general direction of Waggoner's Grocery Store. With the door of the car open she turned and reached into the back seat to get some empty coke bottles. As she was doing so, defendant

backed her car from its parking place, into the open door of plaintiffs' car, pinning Ruth Alexander between the door and body of the car.

The distance from the right side of plaintiffs' car to the rear of the defendant's car as it was parked in front of the grocery store, varies from the testimony. The variance is from a low of 20 feet to a high of 35 feet. This in our opinion becomes immaterial on this appeal in view of the errors relied upon for reversal and our opinion thereon.

■ The first error relied upon by defendant concerns the testimony of the witness Robert Thompson called on behalf of plaintiffs. He testified to certain phases of this collision which he witnessed. He was vigorously cross examined whereupon the following (taken from the record) transpired:

"Q. Have you ever talked to Mr. Alexander about this accident?
A. No I haven't.
Q. Have you ever talked to Mr. Horsley the lawyer here?
A. No.
Q. Have you ever talked to Mr. Vespa in his office?
A. Who is this?
Q. In Mr. Horsley's office?
A. No I haven't.
Q. You haven't talked to Mr. Alexander either, I take it?
A. Not about the accident, no.
Q. You were just asked to come up here to testify?
A. Yes.
Q. You were given a subpoena to testify?
A. That's right.
Q. Never talked to anyone before about this representing Mrs. Alexander?

A. No I didn't, no. Some insurance adjuster— some insurance man was at my place, that's the only thing I know I talked to anyone about. I don't know who he represented. I think. . . .

MR. GILLESPIE: I would like to take five (5) minutes. I am through unless you have some questions.

### REDIRECT EXAMINATION
### BY MR. HORSLEY:

Q. Just one question. You were subpoenaed to come here as a witness?
A. That is right.
Q. You never discussed this matter with anyone in my office at all or connected with my side of the case at any time did you?
A. No, I did not.
Q. First time I ever met you was when I walked over to the rail a while ago?
A. Yes.
MR. HORSLEY: That is all.
MR. GILLESPIE: That is all.

(Witness Excused)

COURT: Let the Jury take a walk for about five (5) minutes.

WHEREUPON the Jury was removed to the jury room and the following proceedings had out of the presence of the Jury.

MR. GILLESPIE: I would like at this time, I don't think it was proper in front of the Jury, to move to strike that answer as not being responsive to the question and also to move for a mistrial and motion to withdraw a juror. The witness was specifically asked whether he talked to anyone representing Mrs. Alexander and I

309

don't think the question was general enough to have the answer which was given or could be reasonably expected on this type question. I feel that the Defendant was prejudiced from this answer and for that reason request the motion.

COURT: The motion to strike will be denied. The motion to withdraw juror will be denied. It was apparent to the court on examination of one or two (2) other witnesses it was about to happen and as long as questions are asked with reference to whether they talked to any representative of the plaintiffs sooner or later you are going to get that sort of answer and those questions serve no useful purpose. The motion is further denied for the reason that the Court can not say, at this time, there has been any prejudice created as a result of it and for that reason certainly the motion to withdraw juror at this point is denied. The Court is further of the opinion that the answer of the witness can not be considered as a mere voluntary statement on the part of the witness. All three (3) motions will be denied."

We are not impressed with the assertion of counsel for defendant that it is reversible error *for the plaintiff* to make any disclosure of the fact that defendant is insured. The foregoing occurred during defendant's cross examination. Counsel for defendant pursued a line of inquiry which to the average lay witness would lead the witness to believe he was bound to disclose that which he did disclose. The redirect examination was necessarily within the limits of the cross examination. Furthermore no objection was made to any question propounded on redirect examination. In situations such as this, the trial judge is placed in a most perplexing situation by counsel for defendant. He can strike the reference to insurance and direct the jury to disregard it. When he follows this course he

emphasizes the matter. When he follows the course followed here, he is sure to be confronted with the vociferous charge of error. A realistic approach in our modern times to this problem will be found in Pinkerton v. Oak Park Nat. Bank, 16 Ill App2d 91, 147 NE2d 390. The observation of the court in the Pinkerton case, supra, is apropos:

"Certainly the public acquaintance with and attitude towards liability insurance is far different today than it was in the days of the Wiersema decision—1909. Its existence and impact upon our civilization is one of the facts of life."

■ Counsel for defendant calls attention to the foregoing assignment of error primarily in connection with the assignment of error that the verdict as to plaintiff Ruth Alexander is excessive. No question is raised as to the verdict of William D. Alexander. To judge the verdict of Ruth Alexander we are required to review the medical testimony.

Ruth Alexander was removed to a hospital by ambulance. She remained in the hospital for 18 days after the occurrence on December 6, 1958, and was under the care of a specialist in bone and joint surgery. Upon entry in the hospital she had a crushing injury to both legs in the calf area, a contusion on her head and laceration of her eye. X-rays did not reveal any bone fractures. For seven days she could not stand. Physical therapy was administered. When she was able to get out of bed the heel cord in her left leg was tight to the point that she could not place her foot on the floor. Therapy was continued until April or June of 1959 when she could put her heel on the floor. Upon return to her home she was not able to do her regular household duties for three or four months. At the time of the trial she had an indentation in her left leg in the calf area of 7 centimeters

by 3 centimeters which will be permanent. In addition her attending doctor testified to an internal fibrotic ring of scar tissue around her left leg which in his opinion would be permanent. Plaintiff testified she experiences pain in her left leg when she is moving around for any period of time, and just prior to her menstrual periods and that she has to rest frequently. Her attending doctor said that pain was consistent with the fibrotic ring. Her total medical expense was $686.15.

The plaintiff Ruth Alexander was examined in April, 1961, at the request of counsel for defendant by an orthopedic pathologist. Except for the indentation in the left leg of 7 centimeters by 3 centimeters he could not find any abnormality in plaintiff. He could not find any condition that was compatible with pain; any fibrotic ring or evidence of fibrosis.

■ We have not gone into an extended discussion of the testimony of the two doctors. It should be apparent from the foregoing, that the attending doctor of plaintiff and doctor selected by counsel for defendant were poles apart in their diagnosis of the condition of Ruth Alexander at the time of trial. Counsel for defendant would have us view the medical testimony in a light most favorable to the defendant. Apparently, this the jury refused to do. An impartial medical expert, selected pursuant to the Rules of the Supreme Court, might well have resolved the differences. However, the assessment of damages is preeminently the function of a jury. To attempt to apply a mathematical formula to that function might well create injustices one way or another. Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63. We cannot say in the case before us that the verdict is excessive. It also follows that we cannot say that the reference to insurance, supra, produced an excessive verdict.

312

■ Counsel for defendant finally assigns as error the refusal of the court to give defendant's instruction No. 16. This instruction was as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

"No person shall park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control device, on the roadway side of any vehicle parked at the edge or curb of a street.

"If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

At the conference on instructions counsel for plaintiff made the following objection to this instruction:

"Mr. Horsley: I will have to object to Defendant's Instruction No. 16 as it is not applicable. I certainly object to No. 16 for the reason that it is not applicable to the facts in this case. It is not applicable to the situation of custom and usage and there is no violation of the statute for parking in an area not used for parking. That would be directory."

Sec 187, Chap 95½, Ill Rev Stats 1957 provided in part as follows:

"No person shall park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control device, in any of the following places:

313

"12. On the roadway side of any vehicle parked at the edge or curb of a street."

Sec 116a(c) of the same chapter provided:

*"Park*—When prohibited means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading."

Under the undisputed testimony in this case William D. Alexander was temporarily stopped to permit his wife to unload her coke bottles and go to the grocery store. He intended to proceed on to pay his rent. The instruction as tendered was not applicable to the factual situation. Nor could counsel for defendant justifiably claim surprise at this theory, for the complaint alleged among other allegations that "the said William D. Alexander stopped said motor vehicle . . . in order to allow the Plaintiff Ruth Alexander to alight from said motor vehicle."

We find no reversible error in the record before us and accordingly the judgment of the Circuit Court of Sangamon County is affirmed.

Affirmed.

REYNOLDS, P. J. and CARROLL, J., concur.