Lucien Livings, Plaintiff-Appellee, *v.* The City of Chicago, Defendant-Appellant.

(No. 58679;

First District (4th Division)—February 26, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Harvey N. Levin, Assistant Corporation Counsel, of counsel), for appellant.

Philip E. Howard, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Lucien Livings, brought an action against the City of Chicago to recover damages for personal injury alleged to have been incurred as a result of the negligence of the city in maintaining a city sidewalk. On August 16, 1972, a jury verdict was rendered in favor of the plaintiff, assessing damages at $100,000.

The city appeals, contending (1) that the court erred in refusing to give a requested instruction to the jury delineating the requirement that the city have actual or constructive notice of the condition of the sidewalk to be held liable, and (2) that the $100,000 judgment is excessive.

At trial the plaintiff called four witnesses. The city presented none. The plaintiff, 57 years old at the time of trial, testified on his own behalf that at about 4 P.M. on Sunday, August 4, 1968, he left his residence at 3751 South Wood Street in Chicago to go for a stroll in the neighborhood with no particular destination in mind. About 2 years previously he had developed some "trouble" with his right ankle, and so he customarily used a "walking stick" or cane for support, as he did on this day. About two short blocks from his home, as he walked north on Paulina, he approached a hole in the sidewalk in front of 3740 South Paulina which he had seen on other occasions. On this date he first saw the hole, which was about 2½ inches deep, from a distance of about 10 feet. He attempted to use the ribbon of stable sidewalk to the left of the hole. As he was abreast of the hole a boy heading south on a bicycle approached him from ahead and called to him "to look out." He moved to the right, toward the hole, to let the boy pass on his left. In so doing his

cane hit an upraised portion of the sidewalk throwing him off balance and causing his cane to slip into the hole, and he fell on his right side. He lay there in "terrible pain" from the knee half way up the thigh on his right leg for about 3 minutes before a passer-by helped him up and took him to the steps of a nearby house. The man then left to call an ambulance.

About a half an hour or more later the police arrived in a patrol wagon, put the plaintiff on a stretcher, and took him to the County Hospital. He was still in terrible pain. The doctors at the hospital took X-rays, which indicated a completely fractured right thigh bone (or femur). A pin was inserted below the knee of his right leg. His leg was put in traction and remained so for 10 weeks, during which time he had to continually lie on his back in bed. Upon being removed from traction, he was put in a body cast which extended from the bottom of the right foot all the way up to his chest. He was released from the hospital a few days after the cast was applied, but it was kept on for 2 months, during which time he remained bedridden at home. Other testimony regarding the nature and extent of his injuries will be discussed below.

Kathleen Nowak testified that she resided at 3748 South Paulina on the day of the accident and had lived there for 20 years. This was two doors south of where the plaintiff fell. She walked by there every day and stated that the defect in the sidewalk shown in the exhibits had existed for "one or two years" before August 1968. She further said that she did not know the plaintiff or anything about his accident.

The only other witnesses, both also appearing on behalf of the plaintiff, were Bessie Havlan, a librarian employed by the County Hospital who identified the X-rays of the plaintiff which were admitted into evidence, and Doctor Allen Hirschtick, a certified orthopedic surgeon who examined the plaintiff.

At the close of the evidence, the city tendered the following instruction for the jury.

> "The Jury are [sic] instructed that before a municipality can be held liable for a condition in its streets or sidewalks, it must be shown that the City had actual notice of such condition or that such condition had existed for so long a time that the City in the exercise of ordinary care should have had notice of same and should have had reasonable time to remedy same."

The instruction was drawn to reflect the rule that a local public entity is only liable if it has either actual or constructive notice of the defect for a sufficient time prior to an injury to have corrected the condition. (See Ill. Rev. Stat. 1971, ch. 85, par. 3—102.) The trial court refused

the instruction, and the city bases its first allegation of error on that refusal.

■■ The city stresses that a litigant has a right to have instructions submitted to the jury in accordance with the law governing the case. With this fundamental rule we are naturally in accord. (*Blanchard v. Lewis*, 414 Ill. 515, 112 N.E.2d 167.) It is well established that failure to give a party the right to have the jury instructed upon his theories of recovery or defense may require reversal. (*Sims v. Chicago Transit Authority*, 7 Ill.App.2d 21, 129 N.E.2d 23.)

We first point out, however, that the issue of notice was amply brought to the jurors' attention in the instructions given to them. The "issues made by the pleadings" instruction (IPI 2d 20.01) indicated that the plaintiff alleged negligence on the part of the city in that it "[s]uffered and permitted said sidewalk to be and remain out of repair * * * of which dangerous condition the defendant knew or in the exercise of ordinary care ought to have known." Under a separate instruction the jury was informed that it was the plaintiff's burden to prove the claims made in the issues instruction.

We further point out that the plaintiff's evidence in regard to notice was uncontradicted, and so sufficiently strong that the trial court might well have found that the city had constructive notice as a matter of law.

■■ In this regard we recognize that generally whether a defect in a public sidewalk has existed a sufficient length of time prior to the injury for the city to be deemed to have constructive notice is a question of fact for the jury. The city cites for this proposition *Trojan v. City of Blue Island*, 10 Ill.App. 47, 134 N.E.2d 29, and *Baker v. City of Granite City*, 311 Ill.App. 586, 37 N.E.2d 372. Neither of these cases, however, stands for the proposition that the question of whether a city has had notice of a defect must always be left for the jury.

In *Trojan* the only testimony regarding the length of time a defect in a sidewalk had existed was that of the plaintiff's son, who had been with the plaintiff when she fell. He said that "from his observation he would estimate that the hole had been there for a period of one to two months. He admitted it was hard to tell, but felt it was there at least a month." (10 Ill.App.2d 47, 49, 134 N.E.2d 29, 30.) The court, in affirming a jury verdict for the plaintiff, held that the son's statement about being doubtful as to the precise length of time the defect existed did not destroy the value of his testimony and whether the defect had existed for a sufficient time to constitute constructive notice to the city of its existence was for the jury to decide. In *Baker*, the plaintiff was injured when while walking on a public sidewalk, she stepped on the cover of a

catch basin, the cover tilted, and she fell into the basin. The plaintiff testified that before stepping on it, the cover "looked all right, and there was nothing apparently wrong with it," but that after falling she discovered that the rim around the basin on which the cover rested was "filled with rust and corrosion," and that the lower edge of the cover was worn "as thin as a piece of cardboard." (311 Ill.App. 586, 588-89, 593, 37 N.E.2d 372, 373, 375.) City employees testified that the lid was put on new about 6 months before the accident, and no inspection was made in the interim. There was no direct evidence that the complained of condition had existed for any specific length of time prior to the accident. In reversing a judgment for the defendant notwithstanding the verdict the court held, on the state of that record, that it was peculiarly wihin the province of the jury to determine whether or not the alleged defective conditions were of such a character and had existed for such a length of time that the defendant might have discovered and remedied them, and to determine whether or not the defendant was negligent in this respect.

In the above cases there was apparent some dispute with respect to the defective condition, whether in regard to it's conspicuousness, the length of time it existed, or indeed if in fact it did exist. (See also *Palermo v. City of Chicago Heights*, 2 Ill.App.3d 1004, 276 N.E.2d 470, also cited by the defendant.) No such genuine dispute exists in the instant case. The undisputed and uncontradicted evidence is that the deteriorated portion of the sidewalk was approximately 2 to 3 feet in width, 3 feet in length, and 2½ inches deep. The testimony of a disinterested third party, based on her own observations, indicated that the defective condition, located a short distance from her residence, had existed for 1 or 2 years prior to the accident. There was no contrary evidence for the jury to consider.

■■ The rule is that constructive notice is present where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition. (*Palermo v. City of Chicago Heights*, 2 Ill.App.3d 1004, 276 N.E.2d 470.) And, as stated in *Boender v. City of Harvey*, 251 Ill. 228, 95 N.E. 1084 (where the court held as a matter of law a municipality had no notice of a dangerous condition), while generally constructive notice is a question for the jury, "[w]here the facts are undisputed, and but one reasonable inference can be drawn from them, it then becomes a question for the court." (251 Ill. 228, 232, 95 N.E. 1084, 1085.) Under the facts of the instant case, the only reasonable conclusion to be drawn could well be that the city had notice, whether actual or constructive, of the defect, and this issue might then have been determined as a

matter of law by the court under the applicable standard. See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.

■■ In any event, when we consider both the evidence in the record relating to notice, and the instruction that was given alerting the jury to this issue, we find no ground for reversal in the court's refusal to give the requested instruction.

We next consider whether the verdict and judgment in the amount of $100,000 is excessive.

It is settled law in Illinois that the amount of a verdict is largely within the discretion of the jury. (*Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 158 N.E.2d 63.) As stated in *Keel v. Compton*, 120 Ill.App.2d 248, 254, 256 N.E.2d 848, 851, "[c]ourts are reluctant to disturb jury verdicts * * * and will not do so unless such verdicts are the result of passion or prejudice or are palpably erroneous." The defendant recognizes these principles, but asserts that the verdict is palpably erroneous since the plaintiff did not have any out of pocket expenses (commonly called special damages), and there was no showing that the plaintiff's activities would be greatly altered. Since the plaintiff testified that he had not worked for several years prior to the accident, and his attorney made no claim for lost wages, and since no evidence was offered to prove any expenses for hospital services, doctor bills, therapy or other such expenses, the defendant claims that the sole basis of the verdict was pain and suffering. It is thus requested that, should we determine not to reverse this case for a new trial, we order a remittitur or otherwise remand the case for a new trial on the issue of damages only.

We first note that, as for the reason the plaintiff had no so-called out of pocket expenses including doctor bills and related items, the record shows that he had been unemployed for over 3 years. He, therefore, apparently had no alternative but to go to the County Hospital and receive public assistance and thus the county absorbed those expenses.

Regarding his other damages, the record reveals that the plaintiff was in intense pain after his fall. When he arrived at the hospital a temporary splint or wrapping was put on his leg. On the following day, August 5, 1968, the doctors took X-rays, inserted a pin below his right knee, and put him in traction. He remained in traction at the hospital for 10 weeks, during which time he had to continually lie on his back in bed, suffering all the attendant discomforts and embarrassments. After being removed from traction, he was put in a body cast which extended from the bottom of his right foot to his upper chest. He was released from the hospital a few days later, on about October 17, 1968, but remained bedridden at home in the body cast for 2 additional months. He returned to the hospital on December 17 for the purpose of having

the cast removed and remained there an additional 3 days. Upon removal of the cast, his leg was stiff and he was unable to bend it for almost a month. He was given a walker, which he uses until this day to get around. He continued treatment for his leg as an outpatient for the next 2 years during which time he visited the hospital about once every 2 months. His last visit to County Hospital was in May, 1971.

The plaintiff testified that his leg still hurts when he puts weight on it, and he cannot walk without the walker. Burdened with the walker, his life is much different than when he simply used a cane. He cannot walk as fast, does not have an arm free to carry packages, and has a more difficult time getting up and down stairs. He no longer goes to the park to sit on a bench and talk to people as he used to enjoy doing.

Doctor Allen Hirschtick, an orthopedic surgeon, testified that at the request of the plaintiff's attorney he examined the plaintiff for the purpose of testifying in court. He ordered X-rays taken and brought them to court. He noticed upon examination of the plaintiff that he could only walk with the aid of a walker. He noticed also that the right leg was obviously abnormally deformed, and was three-fourths of an inch shorter from the hip to the ankle than the left leg. There was a wasting of the muscles on the right thigh due to lack of normal use and a loss of 20 degrees in the range of flexion of the right knee. In his opinion there might or could be a causal connection between the present pathology of the plaintiff's right leg and the trauma that imposed the fracture of the plaintiff's right femur in 1968. He was further of the opinion that the changes in the plaintiff's leg since his injury are irreversible, and the deformities fixed. The need for external support of his knee is permanent, and he must rely on the walker for the rest of his life. The conditions found in the leg are an adequate cause for permanent pain to the plaintiff.

■■ Based on this record, we are not persuaded that the plaintiff's life was not substantially altered by his injury. His leg is irreversibly injured, and is a source of permanent pain to him. It was the province of the jury to evaluate how the need for a stroller would effect his life, and it reasonably appears that he will be denied many basic pleasures and physical abilities he had previously enjoyed. We have examined the cases cited by the city regarding the excessiveness of verdicts and suffice it to say that no mathematical formula can be used to gauge damages. In *Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 158 N.E.2d 63, the plaintiff also sustained a fracture of the right femur, requiring surgery, was unable to walk without crutches for 3 years, and had permanent injury. Her special damages were $1500, but she received a verdict for $75,000. The court in affirming stated:

"It is true that the verdict is large in comparison to the expenses

of plaintiff, but we cannot limit compensable damages for pain and suffering to a set percentage of medical, hospital and kindred expenses. * * * Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination * * *." (16 Ill.2d 442, 452-53, 158 N.E.2d 63, 69.)

See also *McKasson v. Zimmer Manufacturing Co.*, 12 Ill.App.3d 429, 299 N.E.2d 38.

We have carefully reviewed the record and do not believe that the amount of the verdict was the result of passion or prejudice or that it is palpably erroneous. We are also not unmindful of the fact that the trial judge who saw and heard the witnesses overruled the city's motion to set aside the verdict.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.